# CHARLESTON

### WILLIAMSON v. LEVINE.

Submitted September 29, 1914.   Decided October 13, 1914.

1. APPEAL AND ERROR—*Finding of Fact—Review.*

Findings of a trial court as to facts, upon issues submitted to it in lieu of a jury, upon a commissioner's report and the evidence returned therewith, will be set aside, if unsustained by evidence or contrary to the decided weight and preponderance thereof, notwithstanding their agreement with the finding of the commissioner.   (p. 144).

2. SAME.

But, if the evidence in such case is oral and conflicting and discloses nothing of decisive character, such findings will not be disturbed.   (p. 144).

Error to Circuit Court, Mingo County.

Action of assumpsit by Robert L. Williamson against Jacob Levine.   Judgment for plaintiff, and defendant brings error.

*Reversed and Rendered.*

*Sheppard, Goodykoontz & Scherr,* for plaintiff in error.

*Stokes & Bronson,* for defendant in error.

POFFENBARGER, JUDGE:

In this action of assumpsit for money alleged to be due upon a building contract, the defendant set up a number of counter-

claims by way of recoupment and set off, some of which were allowed and others disallowed. Certain demands of the plaintiff, to which the defendant objected, were also allowed. The trial court referred the case to a commissioner for investigation and report, and, by agreement of counsel, a jury trial was dispensed with and the case submitted to the court upon the commissioner's report and the evidence returned therewith. The court adopted the findings of the commissioner and rendered a judgment for the plaintiff in the sum of $881 42.

The plaintiff in error complains of three items found against him, one of $266.75, the cost of a plate glass front with the expense of drayage and crating, another of $58.81 for steel beams alleged to have been put into the building as extras, and another for $60.45, the value of 465 cement or terra cotta blocks, which the plaintiff claims to have furnished for a part thereof not included in his contract. He also complains of the disallowance of two of his counter-claims, one of $45.00 for one-half of the premiums paid on policies of insurance on the building, while in course of construction, another of $127.50 for loss of rent, alleged to have been occasioned by the refusal of the plaintiff to deliver the keys to the building, after completion, in consequence of which the prospective tenant of a portion thereof could not.be admitted.

Cross-assignments of error by the plaintiff are founded upon the disallowance of two items for commissions, amounting respectively to $88.08, $77.33 and claim of $240.00 for part of the compensation of a time-keeper. He further complains of two findings in favor of the defendant, one as to an item of $118.56 for deficiency in materials used in the roof, and the other of $24.50 for failure to bridge the roof joists.

The glass for which the disputed claim is made was delivered upon the premises of the defendant, but rejected by him because, in his opinion, it was not of the quality or kind called for by the plans and specifications, although the plaintiff claims he ordered it in accordance therewith. It was prepared for union at the corners by what are called "Colsom Bars." The defendant wanted beveled glass united at the corners by cleats or clasps. The plaintiff says the defendant did not object to the glass, until he understood how it was :

to look when put up. As to what the plans and specifications called for, there is some confusion, resulting from the preparation of two sets of plans, one for a three story building which was abandoned, and the other for a two story building, the one actually erected with a third story put on without plans and specifications. The plans for the two story building, except as to the addition of the third story, seem to have been generally adhered to, but there is evidence tending to show departure from them and consultation of the plans for the three story building, during the process of erection. However, the departures were made by the direction of the owner in each case, and there is no evidence of right in the plaintiff to exercise any discretion in this respect. Hence, the controversy as to the glass involves inquiry as to what was required or prescribed by the plans. Neither set provided for "Colsom Bars" glass. The three story building plans called for round corners or beveled glass, and the detail plans of the two story building prescribed mitered glass. The plaintiff says the front elevation plan indicated the use of "Colsom Bars" and that he sent a copy of it with the order for the glass and had it prepared in accordance therewith, but the contract in express terms required him to familiarize himself with all of the drawings and specifications and give preference to the detail drawings. There is some uncertainty in the evidence as to whether or not the plaintiff, at the time he gave the order for glass, had in his possession a copy of the plans and specifications, but he admits his previous possession of them and delivery of part thereof to material men, in connection with orders for materials. This unauthorized and unexcused departure from the plans and specifications clearly denies right of recovery for the items, unless the defendant by his subsequent conduct, made himself liable therefor. Upon the rejection of the glass, the plaintiff ordered the kind required, but says he notified the defendant that he would not stand the loss of the rejected glass. It was left in the building until completion thereof, and then set outside where it was finally broken. Surely the defendant should not lose his right by insistence upon it. Nor could the plaintiff correct his wrong by mere protest, or by

leaving the glass on the premises of the defendant after rejection thereof. In our opinion, the evidence as to this item greatly preponderates in favor of the defendant.

Though the bill for extras charges extra steel beams, there is no pretense that any were used. The evidence adduced in support of this charge proves the extension downward, by wood frame work, of certain steel cross beams in the seiling, so as to render them co-extensive with the beams running lengthwise through the building and thus make the partitions between the panels uniform and facilitate the putting on of the metal ceiling. As to whether or not this was extra work, there is nothing decisive in the evidence. The plaintiff claims it was and the defendant says it was not. Manifestly the contractor carries the burden of proof on an issue of this kind, for his general contract presumptively covers all the work, wherefore he must show, as to any particular item, that it is not within the general contract. But he swears this was extra work, the owner denies it, the court has decided in the affirmative and no controlling fact or circumstance showing error in the finding is perceived. If the architect had been employed to superintend the work, the failure of the contractor to obtain his decision upon the question in dispute would likely conclude him, but he was not in charge of the work. The owner himself, an interested party, undertook the work of superintendence.

The charge for cement or terra cotta blocks was improperly allowed. It was made on the contractor's books from the report of a time-keeper who admits it was not reported, upon his personal knowledge, but only upon information from some unnamed workman on the building. Less than half the number charged for were used and they were put in the basement, a part of the structure not included in Williamson's contract. The owner proves his purchase of such blocks from strangers in quantity sufficient for the requirements of the building. These corroborating circumstances clearly overcome the slight and uncertain evidence adduced in support of the charge.

There was no right of detention of the keys of the building by the contractor, as a means of compelling a settlement,

but he admits he withheld them for that purpose, and this was in violation of his implied contract to give possession of the building on completion thereof. The value of the use of the detained portion of the building was the measure of damages and the rent for which it was contracted was the only evidence of such value adduced. Fitness of the building for occupancy by the tenant during the period of detention is essential to this right of recovery, but that seems to be established. Entry of the tenant was forbidden by the contractor and the stipulated time for completion of the building was long past. Charges by the contractor for slight additional work apparently later in date than the refusal to deliver the keys are not controlling. It is not unusual to find trivial matters for correction, after substantial completion and delivery of possession.

One-half of the cost of insurance should have been allowed to the owner. The contract and specifications required him to keep the property insured for the benefit of both parties, and the specifications made a part of the contract expressly provided that the cost of the insurance should be borne by them equally.

The counter-claims for defective material were properly allowed to the owner. Smaller joists than the specifications prescribed were used and fewer of them and the bridging required was omitted.

Nothing in the evidence warrants disturbance of the findings by the commissioner and the court against the contractor's claims for commissions and compensation paid to his time-keeper. These items relate to the third story built under a verbal contract. The contractor says he was to have a commission on the materials for it as well as on the labor, while the owner says he was to pay a commission on the labor only. Bills for materials without any addition for commission were paid while the work was in progress and at least one bill for commission on labor only was paid. These circumstances corroborate the defendant. The time-keeper's services were general, applying to other work as well as that done for the defendant, and the charge is for one-half of it; and besides the charge of $10.00 or $15.00 seems to be exorbitant, since

only a few minutes a day were required. Of course there could be no such charge. under the original contract and the new verbal contract for labor and materials would not cover general expenses of this character. The time-keeping was not labor in the erection of the building, nor labor for the owner. It was work done for the contractor and in and about his own business.

Correction of the errors noted here reduces the plaintiff's right of recovery to $381.72, wherefore the judgment complained of will be reversed and judgment rendered here for said sum with interest thereon from the 6th day of June 1912, the date of the judgment below, with the costs in the trial court but.costs in this court will be adjudged to the plaintiff in error, who substantially prevails.

<em>Reversed and Rendered.</em>