# CHARLESTON.

## STATE v. SAMUEL B. KITTLE et al.

Submitted January 18, 1921. Decided January 25, 1921.

1.  CONSTITUTIONAL LAW—*Interpreting Constitutional Provisions, Previous Provisions and Legislation May be Considered in Pari Materia.*

    In the interpretation of a constitutional provision, it is permissible to resort to and consider previous legislation and constitutional provisions respecting the subject matter and

disclosing the character and development of the measures adopted for regulation thereof, under the rule of construction, authorizing resort to acts *in pari materia* for aid in interpretation. (p. 530).

2.    SAME—*In Interpreting Constitutional Provisions Rule of Practical Construction Applies.*

Upon an inquiry as to the true meaning of a constitutional provision, the rule of practical construction also applies, and renders it proper to take into consideration contemporaneous legislation under the provision in question and long acquiescence therein. (p. 532).

3.    TAXATION—*Constitutional Provisions Authorizing Legislative Exemption of Property Strictly Construed.*

A constitutional provision authorizing legislative exemption of property from taxation is strictly construed and nothing can be exempted that does not fall within its terms; but rational construction within the terms used is required as well as permitted. (p. 529).

4.    SAME—*Parsonage May be Exempted by Legislature Under Constitution as "Property Used for Religious Purposes."*

Under sec. 1 of Art. X of the Constitution of this state, authorizing legislative exemption from taxation, of "property used for * * * religious * * * purposes," the Legislature has power so to exempt parsonages, they being property used for religious purposes and falling clearly within the terms of the exemption clause of said section. (p. 533).

5.    SAME—*Renting Parsonage to Persons Not Ministers Held Not to Destroy Exemption from Taxation.*

A statute exempting parsonages by name, includes property acquired and for a time used as a parsonage, but which, on discontinuance of such use, is rented to persons not ministers of the church to which it belongs, pending disposition thereof, and the rentals from which are used exclusively for purposes of such church. (p. 533).

Appeal from Circuit Court, Ohio County.

Proceedings by the State against Samuel B. Kittle, Charles C. Woods, and others, to forfeit title to certain property for non-payment of taxes. Decree for plaintiff, and defendants named appeal.

*Reversed, and bill dismissed.*

*James W. Ewing,* for appellants.

POFFENBARGER, JUDGE:

The decree under review on this appeal adjudicates forfeiture of the title of a certain lot conveyed to trustees for parsonage purposes on which a parsonage building was erected, for non-entry of the lot for taxation and non-payment of taxes thereon, for a period of five years and more; and, havng thus settled the principles of the cause, continued it for the taking of proof of the value of the property, as the basis for ascertainment of the taxes due on it, and entry of a subsequent order of sale. The appellants are the two surviving trustees of those to whom the lot was so conveyed and the vendee of the property, said trustees having contracted a sale thereof.

By two deeds, one dated, March 29, 1904, and the other June 8, 1904, the latter being described as a deed of correction, the lot in question was conveyed by J. C. McCurdy and S. Nesbitt, Jr., to Charles C. Woods, George R. E. Gilchrist and S. C. Patterson, Trustees for St. Paul's Protestant Episcopal Church of Elm Grove, West Virginia, for the use and benefit of said church, "As a residence for its minister," and to be held by the trustees and their successors, in trust "for such purpose and no other, and according to the terms of and with all such powers in the trustees in relation thereto as are set forth in chapter 57 of the Code of West Virgina." Within a year after this conveyance, a parsonage building was erected on the lot, by the church, and the resident minister moved into it and he and his successor occupied it for more than a year; but, since their vacation thereof, no minister of said church has occupied it. For about fourteen years, the trustees rented it to persons other than ministers of their church; but they used the income thereof for what they believed to be church purposes, maintenance of the property and payment of the interest on a $2,500.00 debt incurred in the construction of the building and secured on the property by a lien and interest on another debt of the church amounting to $2,500.00.

The decree seems to proceed upon the theory of constitutional infirmity in the statute, sec. 57 of ch. 29, of the Code, as amended and re-enacted by chapter 62 of the Acts of 1917, expressly exempting parsonages by name, from taxation. The consti-

tutional provision under which the act was passed is, however, very general in its terms. It authorizes.the legislature to exempt "property used for educational, literary, scientific, religious and charitable purposes" as well as cemeteries and public property. Sec. 1, Art. X, Con. If its terms, "Used * * * for religious * * * purposes," are not to be restrained in their scope, meaning and operation, by construction based upon some rule of interpretation, a parsonage in actual use and occupation as such obviously falls within them. It is legally defined as a house set apart for the minister's residence. Under the common law, it was a portion of the land and tithes established by law for the maintenance of a minister. Bouv. Law Dict. Title "Parsonage." Besides, it occupies the same status in common knowledge, wherefore the courts can take judicial notice thereof.

In view of the connection in which they are found as well as upon general principles, provisions in constitutions .and statutes, exempting property from taxation, are always strictly construed. They constitute exceptions from the operation of more general provisions requiring, ordinarily, equality and uniformity in taxation, so as to place the public burdens, as nearly as may be, upon all property and citizens alike. Considered independently of any adopted principle, equal and uniform taxation must be regarded as being equitable, fair and just. In as much as all exemptions evade the operation of this principle or encroach upon it, they ought to be strictly construed and the courts uniformly hold that they must be. *Baltimore & Ohio R. Co.* v. *Supervisors,* 3 W. Va. 319; *Baltimore & Ohio R. Co.* v. *Wheeling,* 3 W. Va. 372; *Cincinnati College* v. *State,* 19 Ohio 110; *Stahl* v. *Association,* 54 Kan. 542; *Church of Beatrice v. City of Beatrice,* 39 Neb. 432; *Academy* v. *Irey,* 51 Neb. 755; *Washburn College* v. *Commissioners,* 8 Kan. 344; *Young Mens Christian Association* v. *Douglass County,* (Neb.) 83 N. W. 924; Cooley on Taxation 357.

The only arbitrary requirement of the rule of strict construction, however, is that its subject matter must be within the terms, as well as the spirit, of the provision under construction. It does not require assignment to terms actually used, of the most restricted meaning of which they are suscep-

tible, nor any particular meaning. So long as the court stays within the terms used, it may give effect to the spirit, purpose and intent of the makers of the instrument. The rule permits, and other law requires, rational interpretation within the terms actually used. *Reeves* v. *Ross,* 61 W. Va. 7; *Bolles* v. *Outing Co.,* 175 U. S. 262; *State* v. *Small,* 29 Minn. 216; Lewis' Suth. Stat. Con., 2nd Ed., Sec. 530. Under these limitations and restrictions of its operation, a court is obviously at liberty to inquire, by all legitimate means, whether the words "Used for * * * religious * * * purposes," found in Sec. 1 of Art. X of the Constitution, warrant legislative exemption of property not used as a place of actual worship, but used in furtherance of the general purposes of the church by which it is owned and used.

Upon this inquiry, a great many decisions involving the construction of constitutional provisions authorizing the exemption of property used "exclusively" for certain purposes, may consistently be denied conclusive effect, if not wholly disregarded, on account of the dissimilarity in terms used in those provisions. In them, the arbitrary requirement of adherence to terms, the letter of the provision, necessitated inclusion therein of the subjects sought to be exempted. Here, as has already been pointed out, there is no such embarrassment. Any and all of the general rules devised for ascertainment of the intention of the framers of the constitution, falling within the liberal terms used in that instrument, may be invoked.

No reason is perceived why the history and development of the organic provision in question, as disclosed by previous legislation in Virginia, the parent state, and provisions of its constitutions, may not be considered upon this inquiry. In seeking the meaning of a statute, resort may be had to all acts *in pari materia,* acts dealing with the same subject matter, whether still in force and effect or repealed, for solution of an ambiguity or ascertainment of the real intent of the act under consideration. While, technically, constitutional provisions may not be acts *in pari materia,* they are of the same nature as such acts. They reveal the history, progress and de-

velopment of the constitutional provision and thus cast light upon its true meaning. If a subject was dealt with by statute before it was carried into organic law, the repealed statute performs the same function. Hence, we do not hesitate to resort to the Virginia statutes and constitutional provisions relating to this subject.

Turning to them, we find that state's policy respecting exemption was liberal. Under the revised Code of 1819, land, lots, houses or other property belonging to any county, town or college, and houses used for divine worship and seminaries of learning were exempted in very general terms. R. C. 1819, ch. 183, sec. 9. Neither the constitution of 1776 nor that of 1830 seems to have imposed any restraint upon legislative authority to exempt property from taxation. The constitution which came into effect in 1852 required equal and uniform taxation throughout the commonwealth, contained a special provision respecting taxation of slaves, exempted slaves under the age of twelve years, and authorized exemption of "other taxable property," by a vote of a majority of the whole number of members elected to each house of the General Assembly. Code of 1860, Con. Art. IV, secs. 22 and 23. For some years prior to 1850, all churches or houses of divine worship were exempted. Code of 1849, ch. 35, sec. 43. Practically the same provision is found in the Code of 1860, ch. 35, sec. 36. Sec. 1 of Art. 8 of the West Virginia Constitution of 1863, which is substantially the same as the provision quoted from sec. 1 of Art. 10 of the present constitution, was restrictive of the latitude allowed by the Virginia Constitution of 1852, in its specification of the subjects of legislative exemption. At the same time, it was augmentative of the provisions found in the statutes just referred to. Exemption of property used for religious purposes is, in terms, much broader than an exemption of houses used for divine worship.

In the liberal policy thus manifested, nothing indicative of purpose to limit the meaning of the constitutional provision in question, to anything short of the import of its terms as popularly accepted and understood, is perceived. On the contrary, it argues rather strongly intention and purpose to let

them have full and free operation and effect. They manifestly go beyond the statutory provisions in existence at the date of the adoption of our first constitution. Under the constitution of 1860, the legislature was expressly authorized to exempt any taxable property by a majority vote of each house. In cutting down this unlimited power, the constitution of 1863, used the most general terms conceivable, in the enumeration of permissible subjects of exemption.

Acting under the constitution of 1863, and necessarily interpreting this provision thereof, the legislature exempted "property used exclusively for divine worship; parsonages, and the household goods and furniture pertaining thereto." From that date until the present time, it has never been altered. It was in force and effect in 1872, when the present constitution was adopted. In the elaborate revision of the statutes made by the legislature, in 1872 and 1873, to make them conform to the requirements of the new constitution, no alteration was made in it. Nor has it been changed in any of the numerous subsequent sessions of that body, although, under it, parsonages have been constantly and uniformly left off of the tax books. It was put into the statute, when the objects and purposes of the constitution of 1863 were fresh in the minds of the framers of that instrument and of the people themselves. The constitutional provision of 1863 was continued in the constitution of 1872, with knowledge of the legislative construction contemporaneously put upon it, in the exemption of parsonages by name. For nearly forty years since the adoption of the constitution of 1872, the legislature has acquiesced in that interpretation. In all of this, there is found practical construction of the constitutional provision in question; and, while such construction is ordinarily not permitted to extend the meaning or effect beyond the terms used, it is everywhere allowed a very potent effect in the determination of constitutional purpose and meaning within the terms of the instrument. *Cooper Manufacturing Co.* v. *Ferguson,* 113 U. S. 727; *Minor* v. *Happersett,* 21 Wall. (U. S.) 162; *Martin* v. *Hunter's Lessee,* 1 Wheat. (U. S.) 304; *Cohens* v. *Virginia,* 6 Wheat. (U. S.) 51; *Ogden* v. *Saunders,* 12 Wheat. (U. S.) 290; Cooley's Con. Lim., pp. 102 to 107, citing numerous decisions fully sustaining the text. This rule

was invoked and. applied. in *Bridges* v. *Shallcross,* 6 W. Va. 562, 576.

Under these principles, it is manifest that the constitution permits exemption of parsonages from taxation. They are property used for religious purposes, and, to be subjects of exemption, they need not be used in actual worship in the narrow sense of the term.

The constitution, however, does not of itself exempt any property from taxation. It merely authorizes legislative exemption thereof. Hence, it is necessary to inquire whether or not the property in question has been exempted by the statute, and this inquiry depends upon its status. If it is a parsonage within the meaning of the statute, it is exempt. Otherwise it is not. That it once had the status required is beyond question. It was actually used for parsonage purposes for more than a year, but whether it lost that status, by reason of non-use as a parsonage and rental thereof to others than ministers of the church, must be determined. Acquisition and disposition of parsonages are necessarily incident to the right to hold them and, while they are owned and used as such, they are exempt. Unrestrained exemption of parsonages clearly extends to property in course of preparation for such use and to property in process of disposition, after discontinuance thereof, or held in vacancy pending determination as to its ultimate disposition. Exemption does not in terms depend upon use of the property for parsonage purposes. It depends upon the character of the property, and, obviously, a parsonage does not cease to be one, the instant or day the minister moves out of it. Nor does it necessarily loose its status by cessation of use with intent to dispose of it. In the popular sense of the term, it is still a parsonage, and, as the rentals are used for religious purposes, the reason for exemption is just as potent, as it is when the use fully agrees with the name. A failing church stands in even greater need of exemption, than a prosperous and growing one. We are of the opinion, therefore, that the lot proceeded against was. properly omitted from the land books.

For the reasons stated, the decree complained of will be re-

versed, and, as the cause was submitted upon a state of facts agreed to in the pleadings, the bill will be dismissed.

*Reversed, and bill dismissed.*