# CHARLESTON.

STATE v. McDowell Lodge No. 112, A. F. & A. M.

Submitted May 30, 1924.. Decided June 6, 1924.

TAXATION—*Property of Masonic Lodge Leased for Profit Held Not Exempt From Taxation.*

Property of a lodge of Ancient, Free and Accepted Masons, a charitable and benevolent organization, leased for profit is not exempt from taxation under sec. 1, Art. 10 of the Constitution and sec. 57, chap. 29 of the Code, although the rents are used for charitable and benevolent purposes and for the upkeep of the property rented and the discharge of a debt thereon.

Error to Circuit Court, McDowell County.

Action by the State against the McDowell Lodge, No. 112, A. F. & A. M. From a judgment for defendant, plaintiff brings error.

*Reversed.*

*John T. Simms,* for plaintiff in error.

*Strother, Sale, Curd & Tucker,* for defendant in error.

LIVELY, JUDGE:

The crucial question involved in this litigation is whether the real property of a masonic lodge, a part of which is rented for commercial purposes and which produces a substantial income, is subject to taxation.

McDowell Lodge No. 112, A. F. & A. M., duly organized and chartered as a masonic lodge under the laws, owns real estate in Welch, McDowell county, consisting of a lot on which it has erected a four-story building and basement, the third and fourth stories of which are used for lodge purposes; the first and second floors rented as offices to various persons, and the cellar leased for a printing office; the annual rentals for basement, first and second floors amount to $3,958.90. The rents are used by the lodge for purposes of its organization, including moneys in excess of $1,000 appropriated by

it directly to charitable purposes. The rent received is expended for charitable purposes, the maintenance of the building, and to pay off and discharge a debt on the building, including the interest. A sworn statement found in the record gives the income for the masonic year ending September 30, 1922, as $10,337.12, made up of cash balance on hand, dues and fees collected, rents received from the building (which rents amount to $5,458.90), voluntary donations, and miscellaneous income. Disbursements include local charities, interest on the debt, ($1,106.30), rent, salaries, supplies, funerals, grand lodge dues, for masonic home, janitor, light, heat, water, repairs, miscellaneous expenses for lodge and building, insurance, taxes, and an amount ($2,000) paid on debt. The property was entered on the land books and assessed at $25,-000 for the year 1922, the total taxes amounting to $632.75, which were paid under protest by the lodge to the sheriff. Subsequently, in June, 1923, the lodge petitioned the county court for a refund of the taxes paid, claiming that the property was not subject to taxation and was erroneously assessed; the county court granted the prayer of the petition, holding that the property was exempt from taxation, and ordered the sheriff to refund the $632.75 theretofore paid. To this decision of the county court the circuit court awarded a writ of *certiorari*, on petition of the state, and a hearing was had on October 27, 1923, when relief was denied to the state, the petition for *certiorari* dismissed and the cause stricken from the docket. The clerk was ordered to certify the disposition of the case to the county court. To this action of the court the state excepted, the proceeding stayed for the purpose of obtaining a writ of error, which writ was granted by this court.

Counsel for the masonic lodge challenges the jurisdiction of this court to entertain this writ of error, claiming that the action of the county and circuit courts was purely administrative and not judicial. To sustain that contention the cases of *Railroad Co.* v. *Board of Pub. Works*, 28 W. Va. 264; *McLean* v. *State*, 61 W. Va. 537; and *Bluefield* v. *State*, 63 W. Va. 480 are cited. The question of the taxability of property is quite different from controversies over the valuation for taxation. The taxability of property is jurisdictional

and calls for judicial determination; whereas, the fixing of values for taxation is merely ministerial. This distinction runs through all of our cases on the subject· Wherever the taxpayer raises a question of valuation which is decided adversely to him, he may go to the circuit court, and the judge thereof in deciding the question acts in a ministerial capacity, and no appeal is given from his decision to this court. But where any tribunal having jurisdiction passes upon the taxability of the property judicial review thereof may be had, and if the amount involved is in excess of $100 this court has jurisdiction to review. Our cases so holding are cited in *Humphreys* v. *County Court*, 90 W. Va. 315, beginning with *Southside Bridge* v. *County Court*, 41 W. Va. 658. It would serve no useful purpose to make additional citations. Under sec. 132-A, of chap. 29, Code, the county court is given authority to pass upon questions of the non-taxability of property, and its decision may be reviewed by *certiorari* from the circuit court, and from that court to the supreme court.

We come to the main question. Is the property of the McDowell Lodge, used in the manner above set out, subject to taxation? Our recent case of *Re Masonic Temple Society*, 90 W. Va. 441, 111 S. E. 637, holds that lodges of free and accepted masons are charitable bodies and their property when used solely for charitable and benevolent purposes and not held or leased out for profit, is exempt from taxation. We affirm that decision. Many of the decisions of other states are carefully reviewed by Judge MILLER in the opinion, in which he points out that each decision is based upon the particular constitution or laws under which it is rendered. The divergent holdings are thus accounted for. And so, on the question here presented. We must look to our own constitution and statutes for a solution of the question before us. The general policy of this state, accentuated by sec. 1, Art. 10 of the Constitution, is that all property shall contribute to the expenses of the government. Taxes must be equal and uniform; and no species of property can be taxed higher than any other species of property of equal value. One aim of government is to protect property rights, insure the possession and enjoyment thereof by the owners and thus promote domestic tranquillity and the general welfare. The

owners of property, whether they be individuals, corporations or associations, should contribute to the expenses of the protection and stability of that property. There are exceptions to this general policy which may be made by the legislature and which the constitution confines to property which is used, for educational, scientific, religious or charitable purposes. These exceptions are clearly defined by sec. 57, chap. 29, Code, which provides, among other things, that "all property, real and personal, * * * * used for charitable purposes, and not held or leased out for profit," shall be exempt from taxation. The theory justifying exemption of this class of property so used is that the resultant benefits to the body politic will be equal to or in excess of the taxes which would otherwise be imposed, and such religious, scientific, literary or charitable use of the property should be encouraged by relief from taxation. But the statute says it shall only be exempt when the property is used for these purposes, and not held or leased out for profit. It is a rule so well established as to need no citation of authority, that it is incumbent upon the person who claims his property as exempt from taxation to show that the use of that property clearly falls within the exception. The rule of strict construction applies; and if any doubt arises as to the exemption, that doubt must be decided against the person who claims the exemption. While it must be borne in mind that the decisions of other jurisdictions are largely influenced by their constitutional and statutory provisions, it is quite generally held that where property belonging to a charitable institution is rented out or otherwise employed as a source of profit to the institution, it is not sufficient to save that property from taxation because the rent or income is devoted exclusively to charitable purposes; the exemption is generally held to apply only to the property which is actually used and occupied for the charitable purposes for which the institution is organized. A few of the cases so holding are *People* v. *Theological Seminary*, 174 Ill. 177; *Brodie* v. *Fitzgerald*, 57 Ark. 445; *Indianapolis* v. *Grand Master, etc.* 25 Ind. 518; *Fort Des Moines* v. *Polk County*, 56 Ia. 34; *Female Orphan Soc.* v. *Assessors*, 109 La. 537; *Baltimore* v. *Grand Lodge*, 60 Md. 280; *Ridgeley Lodge* v. *Redus*, 78 Miss. 352;

*People* v. *Sayles*, 32 N. Y. App. 197; *Hibernian Benev. Soc.*
v. *Kelly*, 28 Ore. 173, 30 L. R. A. 167; *Episcopal Academy*
v. *Philadelphia*, 150 Pa. St. 565; *American Sunday School*
v. *Philadelphia*, 161 Pa. St. 307; *State* v. *Lawrence County
Board*, 16 S. D. 219; *Morris* v. *Lone Star Chapter*, 68 Tex.
698; *Parker* v. *Quinn*, 23 Utah, 332; *Humphries* v. *Little Sis-
ters*, 29 O. St. 201.  Cases which hold to the contrary are:
*Henderson* v. *Strangers' Rest Lodge*, 17 S. W. (Ky.) 215;
(But see *Newport* v. *Masonic Temple*, 29 L. R. A. (Ky.) 252);
*Cooper Hospital* v. *Birdsall*, 63 N. J. L. 85; *Methodist Church*
v. *Hinton*, 92 Tenn. 188; *Cumberland Lodge* v. *Nashville*, 127
Tenn. 248; *Staunton* v. *Mary Baldwin Seminary*, 99 Va. 653;
*Petersburg* v. *Petersburg Association*, 78 Va. 433.  Space
does not allow a comparison of these cases, and the organic
and statute law under which they were rendered.  The in-
quiring mind may do so.  It is sufficient to say that the great
weight of authority appears to be that because the rents,
issues and profits of the property of a charitable institution
are used for the purposes of charity, that fact will not exempt
the property itself from taxation, under the rule of strict
construction applicable where property is claimed to be exempt
under the exceptions to the general rule that all property
must bear its equal burdens of taxation.  The Iowa statute
under consideration in *Fort Des Moines* v. *Polk County, supra,*
exempted property devoted to religious, literary, charitable,
etc., uses, "and not leased or otherwise used with a view of
pecuniary profit."  The court said it was immaterial to what
purpose the income from leased property was devoted.  The
property was exempt only when not leased or used for profit,
under the very terms of the statute.  The Mississippi statute
exempted property of a charitable institution used exclus-
ively for that purpose and not for profit.  In *Odd Fellows* v.
*Redus, supra,* the same contention was made as is asserted in
the instant case, namely, that the rents of the first floor of the
Odd Fellows building being used for charity that was in
effect the use of the property for charity.  The court said that
contention was against the letter and spirit of the law.

Our statute says property used for charitable purposes, and
not held or leased out for profit shall be exempt.  The property
in question is not used wholly for charitable purposes.  The

character of use of the property itself determines its exemption from taxation, and not the proceeds from its use. The clause, "not held or leased out for profit," is significant. It is difficult to see how the property of charitable and benevolent associations could be rented except for profit to the association. If rented for profit to its members and not for purposes of the association, it would be difficult to place such association in the class of charitable institutions; unless it could be justified under the familiar saying that "charity begins at home." A reasonable and practicable meaning must be given to the phrase. Our case of *State* v. *Kittle*, 87 W. Va. 526, 105 S. E. 775, is relied upon to sustain the contention of the Lodge. A lot of land on which was erected a parsonage had been omitted from the land books and not assessed for taxation, and the lower court held that it had been forfeited for non-entry, basing its holding apparently upon the theory that the statute which exempted "parsonages and the household goods and furniture pertaining thereto," was unconstitutional. The building had been occupied by the resident minister for some time, but not being convenient for his use, or for some other reason, the trustees had rented the building to others, the proceeds being devoted to extinguishment of a debt on the building. This court reversed the lower court, holding that parsonages were in terms exempted from taxation by the statute, and the statute was not in contravention of the constitution practically construed, by contemporaneous legislation and long acquiescence. The statute in terms exempts parsonages, and their status does not depend upon their use, so long as their use is devoted to church purposes. As regards parsonages, the qualification that they shall not be held or leased out for profit, is not appended as in the case of the property of charitable or benevolent institutions. That case is easily distinguishable from this case.

The use of the property of the McDowell Lodge determines its status as taxable property, and not the use to which the proceeds are expended when it is held or leased out for profit. The property having been leased out for commercial purposes and for profit, as shown by the agreed facts, is not exempt from taxation under the statute.

The judgment of the circuit court and the order of the county court will be reversed, and the prayer of the petition for refund of taxes paid, refused.

*Reversed.*