ASSESSORS OF BOSTON *vs.* OLD SOUTH SOCIETY IN BOSTON.

Suffolk.    May 10, 1943. — June 30, 1943.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & RONAN, JJ.

*Taxation,* Exemption.    *Religious Organization.    Words,* "Parsonage."

Real estate owned by a religious organization and devoted by it to use as the residence of its associate minister, whose duties were substantially the same as those of its principal minister, was a "parsonage" within G. L. (Ter. Ed.) c. 59, § 5, Eleventh, as amended by St. 1938, c. 317; and under that statute such parsonage, as well as the parsonage occupied by the principal minister, as matter of law was exempt from taxation to the extent of $5,000 of its fair cash value.

APPEAL from a decision by the Appellate Tax Board.

*H. Freed,* Assistant Corporation Counsel, (*W. A. McDermott,* Assistant Corporation Counsel, with him,) for the assessors.

*R. Bancroft,* for the taxpayer.

DOLAN, J.    This is an appeal by the board of assessors of the city of Boston from a decision of the Appellate Tax Board granting to the taxpayer an exemption of $5,000 on its Boston parsonage for each of the years 1939, 1940, and 1941, and ordering that abatement be allowed in a fixed amount in each of those years with interest.    The record before us, however, applies only to the year 1939.

The relevant facts are as follows:  The taxpayer, hereinafter referred to as the society, is a religious organization "with a church in Boston."    On January 1 of each of the years involved it was the owner of the land and dwelling house thereon, located at 10 Keswick Street.    The premises had been devised to the society in 1919 with a provision that the building and land should be used by the church as a parsonage.    It has since been continuously used as a parsonage for the associate minister of the church.    The present occupant, who is an ordained minister of the Gospel, and whose duties are substantially the same as those of the

principal minister of the church, has lived in this parsonage since June, 1936. At that time his salary was fixed and the free use of the "associate minister's parsonage" was granted to him by vote of the church. The society also owns another parsonage which is located in the town of Brookline. This parsonage is occupied by the principal minister of the church. In each of the years 1939, 1940, and 1941, the assessors of Brookline granted an exemption of $5,000 upon the Brookline parsonage under the provisions of G. L. (Ter. Ed.) c. 59, § 5, Eleventh, as amended by St. 1938, c. 317. An application for an abatement of the tax on the Boston parsonage was duly filed in each of the years 1939, 1940 and 1941. In each of those years the property in question was assessed at $9,000. The parties agreed that its fair cash value in those years was $8,000. The applications for abatement for the years 1939 and 1940 were denied by the assessors. The valuation for the year 1941 was reduced by $500. An appeal in each case was taken seasonably by the society. The Appellate Tax Board decided that the society was entitled to the relief it seeks and granted exemption of the premises in question to the extent of $5,000 in each year involved, and ordered that abatements be made accordingly upon the basis of a fair cash value of $8,000 in proper amounts with interest. In their appeal the assessors assigned as error, so far as now urged, that the Appellate Tax Board erred in ruling that a religious organization is entitled to an exemption under the governing statute for more than one parsonage, and that it erred in denying their requests for rulings to the contrary, and "in granting an exemption in the amount of" $5,000.

The decision of the Appellate Tax Board was right.

General Laws (Ter. Ed.) c. 59, § 5, so far as material provides, in part, that "The following property . . . shall be exempt from taxation: . . . Eleventh [as amended by St. 1938, c. 317], Houses of religious worship owned by, or held in trust for the use of, any religious organization, and the pews and furniture, and, to an amount not exceeding five thousand dollars for each parsonage, parsonages so owned or held." Prior to the enactment of St. 1938, c. 317,

G. L. (Ter. Ed.) c. 59, § 5, Eleventh, provided exemption only from taxes generally, as follows: "Houses of religious worship owned by, or held in trust for the use of, any religious organization, and the pews and furniture; but the exemption shall not extend to portions of such houses appropriated for purposes other than religious worship or instruction." The statute in this earlier form was construed in *William T. Stead Memorial Center of New York* v. *Wareham*, 299 Mass. 235, and it was held that a dwelling used in part for conducting religious services for which the plaintiff was founded, and in part for the lodging of the pastor and some officers of the plaintiff, did not come within the scope of the statute. That case was decided on January 31, 1938. Statute 1938, c. 317, was enacted following that decision on May 16, 1938, being entitled "An Act relative to the exemption from taxation of parsonages." It is to be assumed that in enacting St. 1938, c. 317, the Legislature was familiar with the decision of this court just above referred to. The language of the statute as amended is clear and free from ambiguity. The exemption to the amount of $5,000 is granted in the case of "each parsonage," owned by or held in trust for the use of "any religious organization." The assessors have based their contentions largely upon definitions of the words "parson" and "parsonage" found in English ecclesiastical law, under which those words were defined in terms of the organization of the Church of England. It may be conceded that according to the technical definition of a parson in that church there may be but one parson and, consequently, but one parsonage, the latter being the residence of the principal minister. Nevertheless we think that, as was said in *Roman Catholic Apostolic Church in the Philippines* v. *Hastings*, 5 Phil. 701, 705, the "English word 'parsonage' as derived from American usage must be read, not in a technical or ecclesiastical sense, but in the broad meaning of a ministerial residence used in connection with any place of worship of any denomination." It is but a house owned by, or held in trust for, a religious organization for religious uses in which a minister serving those uses lives. See *Reeves* v. *Reeves*, 73 Tenn. 644, 647–

648. The word "parsonage" is commonly used to denote a residence furnished by a church to a minister.   See *St. Joseph's Church* v. *Detroit*, 189 Mich. 408, 413.

In the instant case the findings of the Appellate Tax Board establish that the duties of the associate minister who occupies the parsonage in question are substantially the same as those of the principal minister of the society, and the ruling of the Appellate Tax Board, that the governing statute does not limit the exemption to one parsonage to the exclusion of others owned by the same religious organization, was correct. *Griswold* v. *Quinn*, 97 Kans. 611, relied upon by the assessors is distinguishable from the present case, not only by reason of the different terms of the statute construed in that case but also on the facts.

There is no merit in the further argument of the assessors to the effect that, since the statute in question speaks of an exemption "to an amount not exceeding five thousand dollars," in the exercise of their discretion, in a case where the value of the property equals or exceeds that amount, they may allow an exemption in less amount or none at all. Obviously the statute was so phrased as to place a limit on the amount of the exemption, with an understanding that in some instances the exemption would necessarily be less because the value of the property in question would not equal $5,000.   Throughout § 5, as amended, wherever limited exemptions are granted upon certain classes of property, the exemptions are phrased to be "up to" or "to an amount not exceeding" the sum limited, clearly for the same reasons.   The statute is mandatory in terms and in spirit.

Since, as before stated, the record applies only to the tax assessed for the year 1939, an abatement of $248.08 of the tax for that year is allowed with costs.

*So ordered.*