CENTRAL REALTY COMPANY *et al. v.* W. M. MARTIN, *Assessor, etc. et al.*

(No. 9561)

Submitted April 11, 1944. Decided June 16, 1944.

916

*Hogsett & St. Clair* and *Vinson, Thompson, Meek & Scherr,* for plaintiffs in error.

*Homer A. Holt, S. P. Bell* and *Marcum & Gibson,* for defendants in error.

LOVINS, JUDGE:

Petitioners by a proceeding in mandamus sought to compel the assessment of certain real estate for taxation. The Circuit Court of Cabell County held the property exempt from taxation, denied the peremptory writ of mandamus, and this writ of error was granted to review that judgment. The parties to this proceeding will be referred to herein as they stood in the trial court.

Petitioners are hotel owners and taxpayers of Cabell County. Respondents are the Assessor of Cabell County, A. J. Wilkinson, S. P. Bell, and R. M. West, Trustees for the use and benefit of Odd Fellows Home, The Board of Trustees of Odd Fellows Home, a corporation, and Odd Fellows Home, a corporation.

Massachusetts Mutual Life Insurance Company, by deed dated May 27, 1941, conveyed to Odd Fellows Home Endowment Board, a corporation, Lot 11 and the northerly 63 × 90 feet of Lots 12, 13 and 14, Block 95, in the City of Huntington. The consideration for the conveyance was $250,000.00, of which $60,000.00 was paid and $190,000.00 was deferred, the unpaid portion being evidenced by one negotiable promissory note payable in one hundred and eighty monthly installments, one hundred seventy-nine thereof being for $1250.00 each and the final installment for the balance then unpaid, secured by deed of trust. By deed dated June 3, 1941, Odd Fellows Home Endowment Board, a corporation, conveyed said real estate to A. J. Wilkinson, S. P. Bell, and R. A. West, Trustees for the use and benefit of Odd Fellows Home, a statutory corporation under Code, 35-2-6, the transfer being approved by the State Tax Commissioner. The grantees assumed payment of the $190,000.00 note given for the unpaid purchase money. The terms of the trust created by the deed to the Board of Trustees in so far as they are here pertinent are:

> " * * * that so long as they hold said title to said real estate, they will account for and pay over the net income derived from the renting and leasing of said property, at such times and intervals as may be convenient or practical, but not less frequently than once in each calendar year, to the Board of Directors of Odd Fellows Home now located at Elkins, West Virginia, to be used by said Board of Directors solely and exclusively for religious, charitable and educational purposes, in the care, education, training and maintenance of the wards, inmates and residents of said Odd Fellows Home, and that no part of said net income so derived shall ever be used for private purposes or profit." ·

The improvements on the real estate in question consist of the Governor Cabell Hotel and three store-rooms. The hotel is under a ten-year lease to a chain hotel corporation, which operates the property as a hotel in competition with the establishments of petitioners. Rent therefor is $1250.00 a month, plus thirty per cent of gross monthly receipts in excess of five thousand dollars derived from room rentals only. The three store-rooms bring an aggregate monthly rental of $625.00, making a total monthly income from the property of $1875.00 and an overplus in varying amounts realized from room rentals. Although the trial court found as a fact that this income was devoted in part to payments on the deferred purchase money note, the testimony of a member of the Board of Trustees is to the effect that this income is turned over by the trustees to the Board of Directors of Odd Fellows Home, which applies the funds solely to the maintenance of the Odd Fellows Home, an eleemosynary institution situate at Elkins, West Virginia, its inmates, and to other charitable endeavors espoused by the Grand Lodge. There is also testimony to the effect that the initial cash payment, subsequent monthly installments, and some anticipated payments to the insurance company were paid from monies realized from foreclosures of liens, and from gifts, bequests and devises. There is conflicting evidence which tends to show that the monthly payments of the deferred purchase price were made out of the income derived from rentals.

The case was heard on petition, amended petition, demurrer thereto, which was overruled, answer of the Assessor of Cabell County, answer of A. J. Wilkinson, S. P. Bell, and R. M. West, as Trustees, the answer of Odd Fellows Home, a corporation; and evidence taken in open court. Thereafter the Circuit Court of Cabell County refused the writ as hereinabove stated.

Assessments of property by an assessor of a county involves the performance of discretionary, as well as ministerial duties. The determination of the value of property by an assessor requires the exercise of discretion,

but the classification of property for tax purposes and the maximum rate at which such property shall be taxed are prescribed by law. Although the assessment of property is discretionary in part, the exercise of that discretion may be enforced by mandamus, but the manner in which such discretion is exercised is not subject to control by such writ. *State ex rel.* v. *Buchanan,* 24 W. Va. 362. See also *State* v. *Martin,* 105 W. Va. 600, 143 S. E. 356.

· Respondents by cross-assignment of error challenge the finding of the trial court that $1250.00 was paid monthly on the lien indebtedness for deferred purchase money out of the gross income derived from rentals of the property; and that the residue of the income was being used by the trustees for the "care, education, training and maintenance of the wards, inmates, and residents of the Odd Fellows Home at Elkins." We have evaluated the evidence with respect to the above finding of fact made by the trial court, and cannot say that the finding is contrary to the preponderance thereof or that the trial court was clearly wrong. An appellate court should not substitute its appraisal of evidence for that of a trial court made in an action at law and make a different finding of fact where there is conflicting evidence and the finding in the first instance is not clearly wrong. *Williamson* v. *Levine,* 75 W. Va. 143, 83 S. E. 281. See also Vol. 1, Digest of Virginia and West Virginia Cases, Michie, Title, Appeal and Error, Section 329, and Vol. 1, Perm. Supp. to the same work. This Court has applied a similar rule in a mandamus proceeding where there was a finding of fact by a jury on conflicting testimony and the entry of judgment by the court on that finding. *Point Pleasant Publishing Co.* v. *County Court,* 115 W. Va. 708, 177 S. E. 873. There is no dissimilarity in a finding of fact by a trial judge in a mandamus proceeding and a factual determination in an ordinary action. The same rule with reference to setting aside a finding applies in each instance. We conclude that the finding made by the trial court is without error, and that the same should not be modified or set aside.

Is the real estate exempt from taxation? That is the controlling question.

Determination of the foregoing question rests on the application and interpretation of the appropriate provisions of our State Constitution and pertinent statutes. Decisions by courts of last resort in the various jurisdictions are not uniform, doubtless because of the diverse provisions of their organic and statute law, and hence do not furnish a guide for decision.

The power to tax property and the citizens of a state is an attribute of sovereignty derived from necessity, and is one of the inherent powers of government. The Constitution of this State limits that power by the following provision: "Subject to the exceptions in this section contained, taxation shall be equal and uniform throughout the state, and all property, both real and personal, shall be taxed in proportion to its value to be ascertained as directed by law." Section 1, Article X, Constitution of West Virginia. The general rule of equality and uniformity established by the above provision is modified by the following: " * * * but property *used* for educational, literary, scientific, religious or charitable purposes * * * may by law be exempted from taxation; * * *". (Emphasis ours). Section 1, Article X, Constitution of West Virginia. The latter provision creates an exception to the general rule. *C. & O. R'y. Co.* v. *Miller, Auditor,* 19 W. Va. 408, 436, *et seq.* The text of the provision which permits the exception is plain and unambiguous, and we may not search for and apply some meaning ascertained from sources outside the Constitution. *C. & O. R'y. Co.* v. *Miller, Auditor, supra.* The constitutional and statutory provisions exempting property from taxation are strictly construed. *State* v. *Kittle, et al.,* 87 W. Va. 526, 105 S. E. 775. The opinion of this Court in the *Kittle* case states that construction of a constitutional and statutory provision should be rational. It is to be supposed that judicial action in all its aspects is agreeable to reason, that sagacity and discretion control and direct the judicial process in re-

solving any question, and hence for practical purposes the rule of strict construction remains unmodified. Consideration of the foregoing principles lead to the conclusion that the word "used" in the constitutional provision above quoted means exactly what is there said, and that to bring the real estate within the exemption provision of the Constitution and of any statute enacted pursuant thereto, such property must be "used for educational, literary, scientific, religious or charitable purposes", otherwise the exemption is inoperative.

Code, 11-3-9, as amended by Chapter 40, Acts of the Legislature of 1933, provides that, " * * * all property belonging to benevolent associations, not conducted for private profit; * * *" shall be exempt. The real estate here in question may be owned by such association, but the constitutional provision rests exemption on use rather than ownership.

The real estate here claimed to be exempt from taxation is now being occupied and used by four purely commercial enterprises operated for private profit. It is thus seen that the property in question is in competition with other properties in the City of Huntington similarly used. The physical use of the Hotel Governor Cabell does not come within the letter or spirit of the constitutional provision relating to the exemption of property from taxation. Its use in the operation of private business undertakings deprives it of the sheltered position, here claimed, which is accorded to property used for charitable purposes by the beneficent provisions of the Constitution.

Income from property is an incident of ownership, but cannot always be identified with the use of property. We do not mean that the exemption clause of the Constitution should be applied with the same rigor to all property. The physical use of land is a thing apart from the income derived therefrom. The uses of land being many and varied supply the numerous needs of humanity. Land is corporeal, albeit there are incorporeal rights connected therewith, but in this case we are concerned with the use of a tangible and material *res*. There are certain kinds of

personal property such as stocks, bonds, evidences of debt, and other intangibles where the income therefrom is sufficiently identical with the use of the property that the use of the income is, in effect, the use of the property. But this does not hold true as to land. The correct rule is stated in the syllabus in the case of *State* v. *Martin, supra:* "Under section 1, Article 10, Constitution, the exemption from taxation depends on its use. To warrant such exemption for a purpose there stated, the use must be primary and immediate, not secondary or remote". We are aware that recently this Court has considered several phases of the exemption statute. In the case of *In Re Masonic Temple Society,* 90 W. Va. 441, 111 S. E. 637, a claim of exemption for property used solely for charitable and benevolent purposes and not held or leased for profit was allowed. But where real estate owned by a fraternal society is partially leased for profit, the exemption was denied, although the rents derived therefrom were used for charitable and benevolent purposes, upkeep of the property, and the discharge of the lien debt thereon. *State* v. *McDowell Lodge,* 96 W. Va. 611, 123 S. E. 561. Where property constitutes part of the corpus of an educational and eleemosynary trust, subject to a lien held by a private person, the income from which is used solely to discharge a portion of the lien debt against the property, it is not exempt from taxation. *State* v. *Martin, supra.* Notwithstanding the decision in the case of *State* v. *Martin, supra,* it was held in the case of *Prichard* v. *County Court,* 109 W. Va. 479, 155 S. E. 542, that real estate was exempt from taxation where the entire income accruing from rentals of trust property was devoted to the payment of a lien debt created by the trustees. The lien debt so created was treated in that case as an anticipation of income. A sale of real estate by trustees on condition that the purchase price be paid in installments extending over a number of years, and where the purchaser is in possession and the proceeds of the sale are applied as directed by the trust, was held to be exempt from taxation under Code, 11-3-9,

as amended by Chapter 40, Acts of the Legislature, 1933; *Patterson Memorial Fund* v. *James,* 120 W. Va. 155, 197 S. E. 302. We advert to the foregoing decided cases for the double purpose of sustaining the conclusion we reach here, and for the purposes of comparison and the removal of any confusion which may exist relative to exemption of real estate from taxation. We do not believe that the decisions in *Prichard* v. *County Court, supra,* and *Memorial Fund* v. *James, supra,* are within the letter and spirit of the constitutional provision authorizing exemption of property, and we disapprove those decisions.

The cases of *In Re Masonic Society, supra,* and *State* v. *McDowell Lodge, supra,* and *State* v. *Martin, supra,* taken in the composite, state what we believe to be the correct rule: that where real estate is used solely by an organization for educational and charitable purposes and such use is immediate and primary the constitutional exemption from taxation applies, and the statute enacted in pursuance thereof inhibits any assessment for taxation; but real estate is not exempt where owned by a like organization and is leased for private purposes, notwithstanding the application of the income from rentals to charitable and benevolent purposes and upkeep of the premises.

The last proviso of Section 9, Article 3, Chapter 40, Acts of the Legislature, 1933, first appears in the tax exemption statute in Chapter 62, Acts of the Legislature, 1917. Since that enactment no substantial change therein has been effected and the proviso now reads as follows:

"* * * Provided, further, That such exemption from taxation shall apply to all property, including the principal thereof, and the income therefrom, held for a term of years or otherwise under a bona fide trust deed, transfer or assignment, by a trustee or trustees required by the terms of such trust to apply, annually, the income derived from such property to education, religion, charity and cemeteries, when not used for private purposes or profit. Such transfer or assignment shall be in writing, and have the approval of the tax commissioner indorsed thereon; and a copy

"thereof shall be filed in his office before such exemption shall apply to the property embraced therein; and all books and papers showing the collection and distribution of money or property under or by virtue of any such trust shall be open to the inspection of said commissioner, his deputies or assistants, at all reasonable times. And, whenever from any cause, such commissioner shall determine that any such trust is not bona fide, or that it was created or is carried on for the purpose of evading taxation, then he shall withdraw his approval thereof by written notice served upon any trustee in such trust, and thereafter all property covered by such trust shall be subject to taxation; but any person beneficially interested may appeal from any such decision of said commissioner to the circuit court of the county wherein the trustee resides, and if such trustee reside outside the State of West Virginia, then to the circuit court of the county wherein the seat of government is located; and with the further right of appeal to the supreme court of appeals by any party to the proceedings."

This proviso is the basis of the decisions in the cases of *Prichard* v. *County Court, supra,* and *Memorial Fund* v. *James, supra;* and in the *Prichard* case the proviso was held to be a valid exercise of the legislative power in accordance with the Constitution. The question of the constitutionality of this proviso cannot be avoided in this proceeding and the rights of petitioners and respondents demand an answer thereto. Cooley's Constitutional Limitations, 8th Ed., Vol. I, pages 338, *et seq.* We bear in mind that a legislative enactment is presumed to have been enacted in accordance with the Constitution, that a legislative act should not be avoided on light or transient grounds; and that a presumption exists in favor of the constitutionality of the statute. But where, as here, a comparison of the constitutional provisions with the statutory provision indicates that that presumption is not founded on sound reason and is manifestly incorrect, it then becomes our duty to reexamine the decisions of this Court and to determine whether the enactment of a statute

is an authorized exercise of legislative power. An examination of the last proviso of Code, 11-3-9, as amended by Chapter 40, Acts of 1933, clearly discloses that the criteria provided therein for the exemption of property from taxation rests not on the use of the property, as provided by the Constitution, but on (a) the use of income, and (b) the creation of a trust for charitable, religious, educational and cemetery purposes, and the exclusive annual application of the income from such trust to education, religion, charity and cemeteries.

It is true that income from property is an incident of ownership, but as hereinabove pointed out the use of real estate and the income therefrom are not identical. Moreover, there is no provision or requirement in the Constitution which indicates any purpose on the part of its framers to require the creation of a trust, and the application of the trust income to purposes hereinabove indicated.

The legislative department of government has the power to provide by statute the details for tax exemption. The basic condition on which real estate is to be exempted from taxation is fixed by the constitutional provision, which provides that it shall be used for certain purposes, and, in accordance with our decided cases, we believe that the use should be "primary and immediate".

We therefore overrule that part of *Prichard v. County Court, supra,* which holds the second proviso of Code, 11-3-9, as amended, constitutional, and now hold that such proviso is unconstitutional and without effect.

The remainder of the Act is not affected by the invalidation of the proviso. *County Court v. Painter,* 123 W. Va. 415, 421, 15 S. E. 2d 396.

The judgment of the Circuit Court of Cabell County is reversed, and this cause is remanded for further proceedings in accord with this opinion.

*Reversed and remanded.*