## 20488

In re Leroy MARLOW, Petitioner-Appellant.
In the Matter of FIRST BAPTIST CHURCH OF LYMAN, South Carolina v. SPARTANBURG COUNTY TAX EXEMPTION BOARD, Respondent.

(237 S. E. (2d) 57)

220

*Thomas E. Foster,* of Spartanburg *for Petitioner-Appellant,*

*Preston H. Callison,* of Columbia, *for Respondent First Baptist Church of Lyman, S. C.,*

*Daniel R. McLeod, Atty. Gen.,* and *G. Lewis Argoe, Jr., Asst. Atty. Gen., for Respondent Spartanburg County Tax Exemption Board and South Carolina Tax Commission,*

August 11, 1977.

GREGORY, Justice:

This appeal involves the exemption of church property from a county real property tax. The lower court held the property exempt and Marlow, the tax assessor for Spartanburg County, appeals. We reverse.

First Baptist Church of Lyman owned seven parcels of land in Spartanburg County. It furnished one house and lot to its minister. It furnished another house and lot to its "director of music and education", who, in the record, is also called the "minister of music and education" and the "associate pastor." This associate was a full-time employee, but not an ordained minister.

The Sparanburg County Tax Exemption Board exempted all of the church's real property execept for the residence of the music and education director. For some years before, this residence and that of the pastor had continually enjoyed an exemption. The South Carolina Tax Commission reversed the Exemption Board and the circuit court affirmed the Tax Commission. The court held that the residence in question was exempted by Article 10, Section 4 of the South Carolina Constitution and Section 12-37-220(8) of the 1976 Code.

The constitutional provision says in part, "There shall be exempted from taxation . . . all public libraries, churches, parsonages and burying grounds . . . [p]rovided, [t]hat as to real estate this exemption shall not extend beyond the buildings and premises actually occupied by such . . . libraries, churches, parsonages and burial grounds. . . ." South Carolina Constitution Article 10, Section 4. The statutory provision exempts from taxation "[a]ll houses used exclusviely for public worship, the books and furniture therein, the ground actually occupied by them, not exceeding in any case two acres, and the parsonage and the lot on which it is situated so long as no income is derived therefrom. . . ." S. C. Code Section 12-37-220 (1976).

Appellant presents two issues, which are in some respects interrelated: (1) under the above quoted provisions, whether more than one parsonage a church is exempted; and (2) under the cited provisions, whether "parsonage" means the residence of someone who is not an ordained minister.

*Issue 1.* We interpret the Constitution and statute to not limit the exemption to one parsonage for each church. The use of the word "parsonage" originated in the Church of England. As used in its most traditional sense, it means "the benefice under English ecclesiastical law of the parson of a parish : . . . a certain portion of lands, tithes and offerings for the maintenance of a parson. . . ." *Webster's Third New International Dictionary* (unabridged 1971); *see also The Oxford English Dictionary* (1933) (sense [1]).

The word is also used in the sense of the residence of a parson (of the Church of England), or, more commonly today, in the sense of any pastor's house: "[T]he house or house and land provided by a parish or congregation for its pastor's use [b:] a clergyman's residence." *Webster's Third New International Dictionary, supra.* Also, in the *OED:* "Also, in later use, the house of a vicar, perpetual curate, or other incumbent of a parish or parochial district; sometimes (especially in U. S. and Colonies) applied to the residence provided for any minister of religion."

This Court has not had occasion to expressly define the word. [1] Other jurisdictions have, however. In *Assessors of Boston v. Old South Soc. in Boston,* 314 Mass. 364, 50 N. E. (2d) 51, 52 (1943), the court said: the "English word 'parsonage' as derived from American usage must be read, not in a technical or ecclesiastical sense, but in the broad meaning of a ministerial residence used in connection with any place of worship of any denomination" * * * The word "parsonage" is commonly used to denote a residence furnished by a church to a minister. [Citations omitted.]

In *State v. Kittle,* 87 W. Va. 526, 105 S. E. 775, 776 (1921), the court said, "it [parsonage] is legally defined

---

1 However, the Court interpreted the word in *Protestant Episcopal Church v. Prioleau,* 63 S. C. 70, 40 S. E. 1026 (1902). Applying Article 10, Section 4 of the S. C. Constitution, the Court said that a parsonage did not lose its character as a parsonage merely because it was rented out by the rector with the proceeds derived therefrom applied by the rector in obtaining another residence.

as a house set apart for the minister's residence." And in *Harmon v. North Pac. Conf. of Seventh Day Adventists,* 462 P. (2d) 432, 438 (Alaska 1969), we find the following:

The term "parsonage" originally had an ecclesiastical meaning referring to a benefice of land, or of a house, belonging to a parish and appropriated to the maintenance of an incumbent or settled pastor of a church. In its modern signification it simply refers to the residence of a parson attached to a local church or congregation. [Citations omitted.]

The court in *St. Matthews Lutheran Church v. Division of Tax Appeals,* 18 N. J. Super. 552, 87 A. (2d) 732, 735 (N. J. App. 1952), quoted with approval from a decision of the Supreme Court of Vermont: " '[I]ts modern general signification is in the sense of its being the residence of the parson, and it may be with land or without it.' "

In *Assessors of Boston v. Old South Soc. in Boston, supra,* the court held exempt an associate minister's residence under a statute exempting "[h]ouses of religious worship owned by, or held in trust for the use of, any religious organization, and the pews and furniture, and, to an amount not exceeding five thousand dollars for each parsonage, parsonages so owned or held." *Id.,* 50 N. E. (2d) at 52. The court said that the ruling of the lower court (The appellate Tax Board)—that the statute did not limit the exemption to one parsonage to the exclusion of others owned by the same religious organization—was "correct." *Id.,* 50 N. E. (2d) at 53.

See also, for another case in which the court held that more than one parsonage per church was exempted, *Evangelical Covenant Church v. City of Nome,* 394 P. (2d) 882 (Alasaka 1964). (See also *Harmon v. North Pac. Conf. of Seventh Day Adventists, supra,* 462 P. (2d) at 439, n. 3.) We recognize that many modern-day churches have more

than one person performing ministerial, pastoral duties. As was said in *Evangelical Covenant Church v. City of Nome, supra,* 394 P. (2d) at 886, n. 15, "We doubt [that] such a rule [that each church congregation has but one pastor] can be said to have any place in this day and time when many a church congregation is ministered to by more than one pastor."

Appellant argues that because Section 12-37-220 uses "parsonage" in the singular, the exemption should only apply to one parsonage a church. We disagree. The section does not show an intent to limit the exemption to one parsonage; assuming it did, the constitutional language, which uses the plural, would prevail. *Peoples National Bank v. S. C. Tax Commission,* 250 S. C. 187, 156 S. E. (2d) 769 (1967).

Thus we interpret the Constitution and the statute to not limit the exemption to but one parsonage for each church.

*Issue 2.* In the definitions of "parsonage" we have consulted, the person to whom the "parsonage" is furnished is usually referred to as a "minister", "pastor", "clergyman", or "parson". Those terms are most commonly used in the sense of ministers ordained by their religious bodies. See, for instance, the definition of "minister" in *Webster's Third New International Dictionary, supra:* "[O]ne duly authorized (as by ordination) to conduct Christian worship, preach the gospel, and administer the sacraments. . . ." See also the definitions of "pastor", "clergyman" and "parson" in *Webster's, supra,* and *Black's Law Dictionary* (4th ed. 1968) ; 76 C. J. S. Religious Societies Section 39 (1952).

We think then that "parsonage" usually comprehends a residence furnished by a church to an ordained, licensed, or authorized minister associated with that church. The exemption applies in that case. But we do not limit "parsonage" to the residence of one who is ordanied or formally authorized by a church. We recognize that some churches do not have formal ordination, and that many

small, rural churches cannot afford full-time, ordained ministers.

Thus we adopt a broader definition of "minister" than "ordained minister", for the purposes of this case and others like it. Such a definition is given as one usuage of "minister" in *Webster's supra:* "one who performs the duties of a clergyman during his customary vocation but who has never been formally licensed or ordained as a minister." The exemption would also apply in that case.

However, a statute granting an exemption from taxation is ordinarily construed strictly against the claimed exemption. *York County Fair Association v. S. C. Tax Commission,* 249 S. C. 337, 154 S. E. (2d) 361 (1967). The record utterly fails to support or demonstrate that the duties of the director of music and education of respondent church fall within the parameters of "minister" or "ordained minister" as we have defined those terms. The title of his position does not alone determine whether the residence is exempted. We cannot say that his residence is a "parsonage" as we have construed that term and therefore exempt from tavation.

On the record before us, the order of the lower court is

Reversed.

LEWIS, C. J., and LITTLEJOHN, NESS and RHODES, JJ., concur.