503 S.E.2d 851

**WELLSBURG UNITY APARTMENTS, INC., a nonprofit West Virginia Corporation, Appellant Below, Appellee,**

v.

**COUNTY COMMISSION OF BROOKE COUNTY, West Virginia, a public corporation, et al., Appellees Below, Appellees,**

**Robin C. Capehart, Tax Commissioner of the State of West Virginia, successor to James H. Paige, III, Appellant.**

**No. 24203.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 13, 1998.

Decided June 18, 1998.

---

Samuel Spencer Stone, Edmund J. Rollo, Morgantown, for Appellant Below, Appellee.

Darrell V. McGraw, Jr., Attorney General, Stephen Stockton, Assistant Attorney General, Charleston, for Capehart.

MAYNARD, Justice:

This is an appeal by the State Tax Commissioner from a final order of the Circuit Court of Brooke County, West Virginia, entered on November 16, 1996. The order granted Wellsburg Unity Apartments, Inc. (Unity Housing or WUA) relief from an ad valorem real property tax assessment.

The facts are derived from stipulations the parties submitted to the lower court. Unity Housing constructed and currently owns and operates an apartment complex in Wellsburg, West Virginia. Unity Housing is organized and operated exclusively for charitable purposes, and no profits from the apartments may inure to any private person. The United States Internal Revenue Service (IRS) recognizes Wellsburg Unity Apartments as being exempt from federal income taxation under Internal Revenue Code § 501(c)(3) (1986).[1] Donors receive charitable contribution deductions for federal income tax purposes and state income tax purposes.

By contracting with entities like Unity Housing, the federal government provides charity housing to elderly or low income individuals who need such assistance. For example, a person must be sixty-two years old or disabled to be eligible for tenancy in the apartment building in the case at bar. The agreement between the United States Department of Housing and Urban Development (HUD) and Unity Housing limits the contract rent that is chargeable for occupancy to specified monthly charges based on the cost of construction, maintenance, and operation of the apartments. Unity Housing operates solely on a break-even basis and there is no profit.

The apartment building consists of twenty-five one-bedroom apartments and nine efficiency apartments which are rented to tenants.[2] The total monthly contract rental income received by Unity Housing for the twenty-five one-bedroom apartments is $16,775. The total monthly contract rental income received for the nine efficiency apartments is $5,067. HUD pays, as a subsidy, approximately eighty percent of the total monthly contract rent; the tenants pay the remainder of the rent.[3] If a tenant is required to pay a portion of the rent and fails to do so, the lease may be terminated according to HUD guidelines. However, when a tenant is in arrears, Unity Housing invokes a notification procedure. That tenant may then discuss lease termination and other available alternatives with Unity Housing. If a tenant fails to pay his or her unsubsidized portion of the rent, the tenant may be evicted.

In January 1984, the assessor of Brooke County informed Unity Housing that tax exempt status would be granted for the apartment building, "provided there is no action to the contrary by the State Tax Department." The property was granted tax-exempt status until November 1994, when the assessor informed Unity Housing the apartments would be taxable beginning with the July 1995 tax statement. Unity Housing subsequently applied to the Tax Commissioner for a taxability ruling pursuant to W.Va.Code § 11–3–24a.[4] The Commissioner concluded in Prop-

---

1. I.R.C. § 501(c)(3) (1986) states in pertinent part:
   "Corporations ... organized and operated exclusively for religious, charitable, scientific ... or educational purposes" are entitled to tax exemption.

2. There is a two-bedroom apartment located in the building which is used by the resident manager.

3. HUD regulations specify the amount of rent a tenant will pay. The tenant pays thirty percent of his/her adjusted income or $25, whichever is greater, as total tenant rent. A lack of income does not disqualify a person from being a tenant in the apartment building. HUD regulations also provide a utility allowance which is deducted from the total tenant rent. The tenant pays no rent if the total tenant rent minus the utility allowance yields a zero or negative balance. If the balance is a negative number, the tenant is eligible for reimbursement of a portion of the utility allowance.

4. W.Va.Code § 11–3–24a (1961) states:
   At any time after property is returned for taxation and up to and including the time the property books are before the county court [county commission] for equalization and review, any taxpayer may apply to the assessor for information regarding the classification and taxability of his property. In case the taxpayer is dissatisfied with the classification of property assessed to him or believes that such property is exempt or otherwise not subject to taxation, he shall file his objections in writing with the assessor. The as-

erty Tax Ruling 96–16 that the property "is not 'property used for charitable purposes, and not held or leased out for profit' and, therefore, it is not exempt from ad valorem taxation." Unity Housing appealed the ruling to the circuit court. The circuit court concluded "the real property owned by the taxpayer is being used for charitable purposes and is not held or leased for profit and is therefore exempt from taxation." It is from this order the Tax Commissioner appeals.

■ On appeal, the issue we must decide is whether the property is subject to ad valorem property taxation. In order for real property to be exempt from ad valorem property taxation, a two-prong test must be met: (1) the corporation or other entity must be granted charitable status under 26 U.S.C. § 501(c)(3) or 501(c)(4) as is provided in 110 C.S.R. § 3–19.1, and (2) the property must be used exclusively for charitable purposes and must not be held or leased out for profit as is provided in W.Va.Code § 11–3–9 (1990).

■ A provision is made in the West Virginia Constitution for exemption of property used for benevolent, *charitable*, educational, and religious purposes.[5] The West Virginia Constitution does not exempt property from taxation, but the Constitution empowers the legislature to create exemptions for certain types of property. "All property given a legislative exemption must be used primarily, directly and immediately for those enumerated purposes." *State ex rel. Cook v. Rose*, 171 W.Va. 392, 394, 299 S.E.2d 3, 5 (1982) (citations omitted), *overruled on other grounds by Morgantown v. W.Va. University Medical Corp.*, 193 W.Va. 614, 457 S.E.2d 637 (1995). The exemption from taxation depends on the use of the property. The Legislature has codified an exemption for "property used for charitable purposes, and not held or leased out for profit[.]" W.Va.Code § 11–3–9 (1990).[6]

■ The rule regarding "use" is stated succinctly in *Reynolds Memorial Hospital v. Marshall County Court*, 78 W.Va. 685, 687, 90 S.E. 238, 239 (1916), as follows: "If the property is used for charitable purposes within the meaning of the Constitution, then it is exempt from taxation; if it is not so used it is not exempt." This rule is further clarified in *Central Realty Co. v. Martin*, 126 W.Va. 915, 923, 30 S.E.2d 720, 725 (1944), which states:

[W]here real estate is used solely by an organization for educational and charitable purposes and such use is immediate and primary the constitutional exemption from taxation applies, and the statute enacted in pursuance thereof inhibits any assessment for taxation; but real estate is not exempt where owned by a like organization and is

---

sessor shall decide the question by either sustaining the protest and making proper corrections, or by stating, in writing if requested, the reasons for his refusal. The assessor may, and if the taxpayer requests, the assessor shall, certify the question to the state tax commissioner in a statement sworn to by both parties, or if the parties are unable to agree, in separate sworn statements, giving a full description of the property and any other information which the tax commissioner may require.

The tax commissioner shall, as soon as possible on receipt of the question, but in no case later than February twenty-eighth of the assessment year, instruct the assessor as to how the property shall be treated. The instructions issued and forwarded by mail to the assessor shall be binding upon him, but either the assessor or the taxpayer may apply to the circuit court of the county for the review of the question of classification and taxability in the same fashion as is provided for appeals from the county court [county commission] in section twenty-five [§ 11–3–25] of this article. The tax commissioner shall prescribe forms on which the aforesaid questions shall be certified and he shall have the authority to pursue any inquiry and procure any information which may be necessary for the disposition of the issue.

5. Article X, Section 1 of the West Virginia Constitution states in relevant part:

Subject to the exceptions in this section contained, taxation shall be equal and uniform throughout the State, and all property, both real and personal, shall be taxed in proportion to its value to be ascertained as directed by law.... [P]roperty used for educational, literary, scientific, religious or charitable purposes ... may by law be exempted from taxation[.]

6. W.Va.Code § 11–3–9 (1990), titled **Property exempt from taxation,** states in pertinent part:

All property, real and personal, described in this section, and to the extent herein limited, shall be exempt from taxation, that is to say: ... property used for charitable purposes, and not held or leased out for profit[.]

leased for private purposes, notwithstanding the application of the income from rentals to charitable and benevolent purposes and upkeep of the premises.

It is indisputable that property used for charitable purposes which is not held or leased for profit is exempt from ad valorem real property taxation. In fact, the legislative regulations state in 110 C.S.R. § 3–4.1.12 (1989) that "[p]roperty used for charitable purposes, and not held or leased out for profit[]" is exempt from taxation. So, we must now determine whether Unity Housing's apartment complex is used for charitable non-profit purposes.

"Charity" is defined by the legislative regulations as:

[A] gift to be applied consistently with the existing laws, for the benefit of an indefinite number of persons, either by bringing their hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves for life, or by erecting or maintaining public buildings or works, or otherwise lessening the burdens öf government. It is immaterial whether the purpose is called charitable in the gift itself if it is so described as to show that it is charitable. Any gift not inconsistent with existing laws which is promotive of science or tends to the education, enlightenment, benefit or amelioratioñ of the condition of mankind or the diffusion of useful knowledge, or is for the public convenience is a charity.

110 C.S.R. § 3–2.10 (1989). The legislative regulations also explain that:

Charities must be operated on a not-for-profit basis, must directly benefit society, must be for the benefit of an indefinite number of people, and must be exempt from federal income taxes under 26 U.S.C. § 501(c)(3) or 501(c)(4). Moreover, in order for the property to be exempt, the primary and immediate use of the property must be for one or more exempt purposes.

110 C.S.R. § 3–19.1 (1989).

Wellsburg Unity Apartments, Inc. was organized as a non-profit corporation whose charter was issued by the State of West Virginia on June 15, 1983. The parties stipulated that the corporation was organized for and is used exclusively for charitable purposes. To be more specific, we will list the stipulations the parties agreed upon:

Wellsburg Unity Apartments, Inc. ("WUA") is organized as a non-profit corporation under West Virginia law.

WUA constructed, owns and operates Wellsburg Unity Apartments (the "Apartments") in Wellsburg, Brooke County, West Virginia.

WUA is organized and operated *exclusively for charitable purposes.* (Emphasis added).

No profits of WUA may inure to any private person.

The Internal Revenue Service designated WUA as a charitable organization under Section 501(c)(3) of the Internal Revenue Code of 1986, as amended.

WUA is exempt from federal income taxes and donors may receive charitable contribution deductions for federal income tax purposes for donations to WUA.

By contracting with entities like WUA, the federal government provides charity housing to impoverished individuals.

Under the Agreement, WUA agrees to specifically adhere to all HUD policies, provisions, and guidelines.

If WUA defaulted on the Agreement, title to the Apartments reverts to HUD.

The Agreement limits the occupancy of the Apartments to elderly or handicapped individuals and families as defined in Section 202 of the Housing Act of 1959, as amended, and applicable HUD regulations.

The Agreement limits "contract rent" that is chargeable for occupancy to specified monthly charges based on the costs to construct, maintain and operate the Apartments.

The contract rent calculation does not allow for a profit or other return on investment for WUA.

WUA operates solely on a "break even" basis.

Under the Agreement, WUA receives reimbursements from HUD equal to approximately 80% of the contract rent.

Under the Agreement and HUD guidelines, a tenant must be at least 62 years old or disabled to be eligible for residency at the Apartments.

The tenants' anticipated income, assets and medical expenses are calculated based on HUD criteria.

Each tenant's portion of the contract rent ("Total Tenant Rent") is determined based upon the tenant paying 30% of his or her adjusted income or $25.00, whichever is greater.

The HUD approved "Utility Allowance" is deducted from Total Tenant Rent and the tenant pays the balance if it is a positive number.

If a tenant is required to pay a portion of the rent and fails to do so, his or her lease may be terminated according to HUD guidelines.

WUA invokes a notification procedure if a tenant is in arrears.

As part of the procedure, a tenant in arrears has a right to discuss possible termination and alternatives with WUA.

WUA does not refuse services to nor does WUA evict any tenant who cannot pay rent.

WUA may, however, evict a tenant who can pay rent but refuses to do so.

Until property tax year 1996, assessors of Brooke County, West Virginia had designated the Apartments as being used exclusively for charitable purposes and exempt from West Virginia *ad valorem* property tax.

For property tax year 1996, the Brooke County Assessor denied exemption for the Apartments and assessed the Apartments at $303,060 as class IV property, with the resulting tax of $9,559.72 for the year. Because there are 35 units at the Apartments, the additional annual cost chargeable to each unit is $273.14.[7]

These stipulations are broad and comprehensive. By their very terms, Unity Housing has met the requirements which must be fulfilled before a corporation may be granted charitable status; in fact, the parties stipulated that the apartments are used "exclusively for charitable purposes" and the corporation operates on a non-profit basis.

*Morgantown v. W. Va. University Medical Corp.,* 193 W.Va. 614, 457 S.E.2d 637 (1995), is instructive as to the effect a "charitable" designation under Internal Revenue Code § 501(c)(3) has on certain tax exemptions in the State of West Virginia. WVUMC was concerned with whether a university medical corporation which qualified as a charitable enterprise for federal income tax purposes should also be considered a charitable organization for state business and occupation tax purposes. If so, the corporation would be exempt from the city business occupation tax. This Court had previously concluded that "a hospital may only be entitled to a property tax exemption for property not held or leased out for profit and used solely for charitable purposes." *Cook,* 171 W.Va. at 394, 299 S.E.2d at 5. (Citations omitted). That conclusion was not overruled in Syllabus Point 2 of *WVUMC, supra,* where this Court stated:

> The federal exemption from taxation of "charitable" enterprises relies upon the common law meaning of "charitable," as does our state business and occupation tax; consequently West Virginia University Medical Corporation's tax exempt status under Section 501(c)(3) of the Internal Revenue Code of 1954 determines West Virginia University Medical Corporation's charitable status under *W. Va.Code,* 11–13–3(d) (1990). To the extent that *State ex rel. Cook v. Rose,* 171 W.Va. 392, 395, 299 S.E.2d 3, 6 (1982) stating: "[a] designation as a nonprofit corporation by the IRS does not in and of itself result in a property tax exemption similarly being granted to the organization" implies otherwise, it is overruled.

The above quoted language simply forbids taking an implication from a property tax case and applying it to a business and occupation tax case. Property taxes are fundamentally different from other types of taxes, and the question of whether property is used for charitable purposes is fundamentally different from the question of whether the property-owning entity qualifies as a charita-

---

7. We have omitted the stipulations which were deleted by agreement of the parties.

ble organization for purposes of income taxes or business and occupation taxes. The status of the entity or corporation above might determine whether income taxes or business and occupation taxes are to be paid. However, that is not true with real property taxes. In the case of real property taxes, use of the property must also be considered in addition to the status of the entity owning the property.

■ Even though *WVUMC* was concerned with state business and occupation taxes, we believe the holding in that case suggests the apartment complex in question here should be granted a tax exemption. Consequently, we hold that when a corporation is granted a tax exempt status under Section 501(c)(3) of the Internal Revenue Code of 1986, that corporation is deemed to be a charitable organization under 110 C.S.R. § 3–19.1. Further, real property that is used exclusively for charitable purposes and is not held or leased for profit is exempt from ad valorem real property taxation. W.Va.Code § 11–3–9 (1990).

■ The circuit court issued a well-reasoned order from which we quote favorably as follows:

> It is the opinion of this Court that we can extrapolate from the common law definition of "charitable" as expressed in the *City of Morgantown* case and the recognition that the taxpayer does have a federal tax-exempt status under Section 501(c)(3) that the real property owned by the taxpayer is used for charitable purposes because based upon the stipulation reached between the parties it is uncontroverted that the property is being used for purposes of relieving poverty and for other purposes which are beneficial to the community.

> Finding that the first part of the exemption equation is satisfied in that the property is used for charitable purposes, it is not difficult, again based upon the stipulations reached between the parties, that the real property known as the Wellsburg Unity Apartments is not being held or leased for profit.

It is the conclusion of this Court that by applying the uncontroverted, stipulated facts to the statutory exemption provision contained within West Virginia Code § 11–3–9 that the real property owned by the taxpayer is being used for charitable purposes and is not held or leased for profit and is therefore exempt from taxation.

Accordingly, we find the circuit court properly ruled that Unity Housing is organized and operated exclusively for charitable purposes under federal and state law, and the real property which is the subject of this case is not held or leased for profit. Both the status test and the use test are satisfied. Therefore, Unity Housing is exempt from ad valorem property taxation. The judgment of the Circuit Court of Brooke County is affirmed.

Affirmed.