IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2016 Term

_____

No. 15-0597

_____

FILED
**October 11, 2016**
released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

MARK W. MATKOVICH, STATE TAX COMMISSIONER, and LARRY
A. HESS, ASSESSOR of BERKELEY COUNTY, WEST VIRGINIA,
Respondents Below, Petitioners

v.

UNIVERSITY HEALTHCARE FOUNDATION, INC. f/k/a
CITY HOSPITAL FOUNDATION, INC.,
Petitioner Below, Respondent

_____

Appeal from the Circuit Court of Berkeley County (Business Court Division)
Honorable Christopher C. Wilkes
Civil Action No. 14-AA-4

REVERSED

_____

Submitted:  September 13, 2016
Filed:  October 11, 2016

Patrick Morrisey, Esq.
Attorney General
L. Wayne Williams, Esq.
Assistant Attorney General
Charleston, West Virginia
Counsel for Petitioner Matkovich


Norwood Bentley III, Esq.
Martinsburg, West Virginia
Counsel for Petitioner Hess

Michael E. Caryl, Esq.
J. Tyler Mayhew, Esq.
Bowles Rice LLP
Martinsburg, West Virginia
Counsel for Respondent

and

No. 15-0599

LARRY A. HESS, ASSESSOR of BERKELEY COUNTY, WEST VIRGINIA,
and MARK W. MATKOVICH, STATE TAX COMMISSIONER,
Respondents Below, Petitioners

v.

UNIVERSITY HEALTHCARE FOUNDATION, INC. f/k/a
CITY HOSPITAL FOUNDATION, INC.,
Petitioner Below, Respondent

Appeal from the Circuit Court of Berkeley County (Business Court Division)
Honorable Christopher C. Wilkes
Civil Action No. 10-AA-4

REVERSED

Submitted: September 13, 2016
Filed: October 11, 2016

Patrick Morrisey, Esq.
Attorney General
L. Wayne Williams, Esq.
Assistant Attorney General
Charleston, West Virginia
Counsel for Petitioner Matkovich

Norwood Bentley III, Esq.
Martinsburg, West Virginia
Counsel for Petitioner Hess

Michael E. Caryl, Esq.
J. Tyler Mayhew, Esq.
Bowles Rice LLP
Martinsburg, West Virginia
Counsel for Respondent

JUSTICE LOUGHRY delivered the Opinion of the Court.
JUSTICE BENJAMIN dissents and reserves the right to file a dissenting opinion.

SYLLABUS

1. "'Under section 1, art. 10, Const., the exemption of property from taxation depends on its use. To warrant such an exemption for a purpose there stated, the use must be primary and immediate, not secondary or remote.' Syllabus, *State ex. rel. Farr v. Martin*, 105 W.Va. 600, 143 S.E. 356 (1928)." Syl. Pt. 1, *United Hosp. Ctr., Inc. v. Romano*, 233 W.Va. 313, 758 S.E.2d 240 (2014).

2. "In order for real property to be exempt from ad valorem property taxation, a two-prong test must be met: (1) the corporation or other entity must be deemed to be a charitable organization under 26 U.S.C. § 501(c)(3) or 501 (c)(4) as is provided in 110 C.S.R. § 3-19.1; and (2) the property must be used exclusively for charitable purposes and must not be held or leased out for profit as is provided in W.Va. Code § 11-3-9." Syl. Pt. 3, *Wellsburg Unity Apartments, Inc. v. County Comm'n of Brooke Cty.*, 202 W.Va. 283, 503 S.E.2d 851 (1998).

3. "Real property that is used exclusively for charitable purposes and is not held or leased for profit is exempt from ad valorem real property taxation. W.Va. Code § 11-3-9 (1990)." Syl. Pt. 2, *Wellsburg Unity Apartments, Inc. v. County Comm'n of Brooke Cty.*, 202 W.Va. 283, 503 S.E.2d 851 (1998).

4. To the extent that real estate owned by a qualifying charitable organization under 26 U.S.C. § 501(c)(3) or 501(c)(4) is leased or rented to a private, non-qualifying organization, the real estate is not wholly exempt from ad valorem taxation pursuant to West Virginia Code § 11-3-9(a)(12) (2013) notwithstanding the application of rental fees or other moneys realized from such lease or rental to the charitable purposes of such organization.

5. For purposes of determining whether a qualifying charitable organization under 26 U.S.C. § 501(c)(3) or 501(c)(4) has established the exclusive, or primary and immediate, charitable use required for seeking ad valorem tax exemption under West Virginia Code § 11-3-9(a)(12) (2013), the physical use of the property, rather than any income derived from such property, is the determining factor as to the usage of such property.

LOUGHRY, Justice:

The petitioners, the State Tax Commissioner ("Commissioner") and the Berkeley County Assessor ("Assessor"), appeal from the May 15, 2015, order of the Circuit Court of Berkeley County, the Business Court Division,[1] overruling the denial by both the Assessor and the Commissioner of ad valorem property tax exemption to the respondent University Healthcare Foundation, Inc. (the "Foundation") for its Martinsburg, West Virginia, property known as the Dorothy McCormack Cancer Treatment & Rehabilitation Center ("Center").[2] In reversing the denial of a property tax exemption, the circuit court reasoned that the healthcare and recreational services provided in the eighteen different suites of the Center were "primarily and immediately" related to the joint charitable purposes of the Center and the Berkeley Medical Center ("BMC").[3] In view of its conclusion that only twenty-eight percent of the Center's physical space is being used for charitable

---

[1]The parties agreed to the request of Judge Wilkes that this matter be referred to the Business Court Division. By order entered on July 30, 2014, this Court formally transferred this matter to the Business Court Division.

[2]As part of this same ruling, the circuit court reversed the Commissioner's Taxability Ruling 14-01, which ruled against the availability of an ad valorem property tax exemption under the facts of this case.

[3]BMC is the registered trademark of City Hospital, which was first designated as a 501(c)(3) entity for federal taxation purposes in 1940. The Foundation leased four of the Center's suites to the BMC and those suites were used for outpatient treatment and testing services, its Wellness Center, and its diabetic education program. The Center is located on the BMC campus.

1

purposes,[4] the Commissioner asks this Court to reverse the ruling of the circuit court regarding the grant of a property tax exemption. Based on the fact that the Foundation leased suites within the Center to for-profit tenants,[5] the Commissioner argues that state law inexorably prohibits an exemption from ad valorem property taxation. Upon our careful review of the record submitted in this matter in conjunction with the state constitution, applicable statutes, regulations and controlling precedent, we find that the circuit court erred in concluding that the Center was being used exclusively for charitable purposes. Based on our consequent determination that the Foundation is not entitled to an ad valorem property tax exemption, we reverse.

## I. Factual and Procedural Background

The Foundation first sought an exemption from ad valorem taxation of the Center for tax year 2014 from the Assessor and then, when denied such relief,[6] requested a ruling from the Commissioner. Through Property Tax Ruling 14-01, issued on February 22,

[4]Each year the Center completes a survey listing its tenants, which the Assessor then makes further inquires as to whether certain tenants are "exempt" from taxation. *See infra* n.13.

[5]The parties stipulated that three of the Center's tenants are not exempt from federal income taxes. Exemption from West Virginia property taxes requires, in part, that the entity first qualify as a charitable organization under federal tax law. *See* Syl. Pt. 3, *Wellsburg Unity Apartments, Inc. v. County Comm'n of Brooke Cty.*, 202 W.Va. 283, 503 S.E.2d 851 (1998) (setting forth two-part test for tax exemption).

[6]By letter dated December 18, 2013, the Assessor denied the Foundation's request for a tax exemption.

2

2014, the Commissioner ruled against the availability of the requested tax exemption. The

Foundation appealed the Commissioner's ruling and a bench trial took place before Judge

Wilkes on January 9, 2015. Through a decision issued on May 15, 2015, Judge Wilkes

reversed the decisions of both the Assessor and the Commissioner, granting the Foundation

an exemption from ad valorem property taxation under West Virginia Code § 11-3-9(a)(12)

(2013).[7]

At the center of the circuit court's decision to overrule the twice previously-

denied tax relief is its synonymous view of the charitable purposes of the Foundation with

those of the BMC: to improve the health of Eastern Panhandle residents and to promote

medical care and well-being of the community as a whole. The circuit court concluded that

"all of the tenants of the . . . Center provide healthcare services that primarily and

immediately fulfill the charitable purposes of BMC and of the Petitioner [Foundation]."[8]

---

[7]That statute exempts "[p]roperty used for charitable purposes and not held or leased out for profit" from ad valorem taxation. *See* W.Va. Code § 11-3-9(a)(12).

[8]As the circuit court correctly concluded, the phrase "primary and immediately" is interchangeable with the requirement of exclusive use. *See Maplewood Cmty., Inc. v. Craig*, 216 W.Va. 273, 282, 607 S.E.2d 379, 388 (2004) (discussing fact that "only when the use of property for charitable purposes qualifies as primary, direct, and immediate will such use come within the charitable purpose exemption"); 110 C.S.R. § 3-2.48.2 ("Whenever property is required to be 'used exclusively' for stated purposes in order to qualify for exemption under West Virginia Code § 11-3-9, the stated purposes must be the primary and immediate use, and not a secondary or remote use. The property may not be used for purposes which are ancillary to the stated purpose.").

3

Noting that no surplus revenue was realized for the subject tax year,[9] the circuit court recognized that under federal tax law any surplus revenues has to be utilized for the provision of additional healthcare and services to the community. Continuing to conflate the identity of the BMC with the Foundation–the only Taxpayer involved in this appeal–the circuit court concluded that the Center was being used exclusively to carry out the charitable purpose of providing healthcare services and promoting the well-being of the Eastern Panhandle community as a whole.[10] Subsuming the effect of the Center's for-profit tenants,[11] the circuit court simply declared that the Center's leasing of suites to the three for-profit entities[12] was "directly, primarily, and immediately related to the accomplishment of the common charitable purposes of the Petitioner [Foundation] and BMC." The Commissioner and the Assessor seek a reversal of the circuit court's ruling.

---

[9]The Center experienced a net operating loss of $323,583 for 2013. According to the Commissioner, tax documents evidence that the Foundation realized a net profit on its rental properties in Berkeley County for the three preceding tax years (2010-2012).

[10]Separate statutory sections and regulations pertain to charitable hospital as compared to charitable organizations such as the Foundation. *Cf.* W.Va. Code §§ 11-3-9(a)(12) to 11-3-9(a)(17); 110 C.S.R. §§ 3-24 to 3-19.

[11]By definition, a charitable entity seeking property tax exemption "must be operated on a not-for-profit basis." 110 C.S.R. § 3-19.1.

[12]Ambergris, LLC, Dr. Bowen, and Patient Transport.

4

## II. Standard of Review

Because this case involves a question of law with regard to the interpretation of a statute, our review is plenary. *See* Syl. Pt. 1, *Appalachian Power Co. v. State Tax Dep't*, 195 W.Va. 573, 466 S.E.2d 424 (1995) ("Interpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review."); *accord In Re Tax Assessment Against ABPP*, 208 W.Va. 250, 255, 539 S.E.2d 757, 762 (2000). We proceed to determine whether the circuit court erred in its interpretation of the applicability of West Virginia Code § 11-3-9(a)(12) and the corresponding regulations to this case.

## III. Discussion

The issue presented by this case is whether a charitable entity that leases a portion of its real property to for-profit entities is entitled to a statutory tax exemption from ad valorem property taxes for the entirety of its property.[13] Rather than being an issue of first impression, the tax effect of leasing charitable property to for-profit ventures has been considered previously and squarely answered. *See Central Realty Co. v. Martin*, 126 W.Va. 915, 30 S.E.2d 720 (1944); *State v. McDowell Lodge*, 96 W.Va. 611, 123 S.E. 561 (1924). While the Foundation seeks to contort the holdings of this Court to support its position, a

_____

[13]According to the affidavit of the Assessor, "our office has exempted the part of the building used by Berkeley Medical Center . . . and taxed other parts of the building that were rented."

5

review of our constitution, our statutes, and our case law demonstrates that the tax relief sought by the Foundation, and awarded by the circuit court, is prohibited.

Barring express legislative exemption, it is the "general policy of this state . . . that all property shall contribute to the expenses of the government." *McDowell Lodge*, 96 W.Va. at 613, 123 S.E. 562-63; *see* Syl. Pt. 1, *Reynolds Mem'l Hospital v. County Court of Marshall Cty.*, 78 W.Va. 685, 90 S.E. 238 (1916) ("Under the Constitution of this state all property both real and personal shall be taxed, except such property as the Legislature may exempt under the exceptions contained therein."). Our state constitution reposes authority in the Legislature to exempt "property used for educational, literary, scientific, religious or charitable purposes" from taxation. W.Va. Const. art. X, § 1. As we recognized in *State v. Kittle*, 87 W.Va. 526, 105 S.E. 775 (1921), the "Constitution . . . does not of itself exempt any property from taxation. It merely authorizes legislative exemption thereof." *Id.* at 533, 105 S.E. at 777. Through its enactment of West Virginia Code § 11-3-9 (2016), the Legislature delineated certain property classifications that are exempt from ad valorem taxation. At issue in this case is the exemption provided in subsection (a)(12) for "[p]roperty used for charitable purposes and not held or leased out for profit." W.Va. Code § 11-3-9(a)(12).

6

In reviewing the history of the property tax exemption in *United Hospital Center, Inc. v. Romano*, 233 W.Va. 313, 758 S.E.2d 240 (2014), we emphasized that the "nature of the property's usage is critical." *Id.* at 317, 758 S.E.2d at 244. Citing to this Court's holding in *State ex rel. Farr v. Martin*, 105 W.Va. 600, 143 S.E. 356 (1928), we iterated: "Under section 1, art. 10, Const., the exemption of property from taxation depends on its use. To warrant such an exemption for a purpose there stated, the use must be primary and immediate, not secondary or remote." *Romano*, 233 W.Va. at 317-18, 758 S.E.2d at 244-45 and syl. pt. 1.

Charitable organizations seeking an exemption from ad valorem property taxation based on property usage must demonstrate compliance with the following criteria:

> In order for real property to be exempt from ad valorem property taxation, a two-prong test must be met: (1) the corporation or other entity must be deemed to be a charitable organization under 26 U.S.C. § 501(c)(3) or 501 (c)(4) as is provided in 110 C.S.R. § 3-19.1; and (2) the property must be used exclusively for charitable purposes and must not be held or leased out for profit as is provided in W.Va. Code § 11-3-9.

Syl. Pt. 3, *Wellsburg Unity Apartments, Inc. v. County Comm'n of Brooke County*, 202 W.Va. 283, 503 S.E.2d 851 (1998). Prong one of the *Wellsburg Unity* test is not in dispute; whether prong two has been established is the crux of this case.

7

In seeking the subject tax exemption, the Foundation asserted the following basis for its position:

> The Foundation operates exclusively in pursuit of its charitable purpose as a supporting organization of City Hospital, Inc. (d/b/a Berkeley Medical Center) another 501(c)(3) charitable organization, which, in turn, uses the suites and common areas of the subject property, through its own operational units and the other healthcare providers occupying the same, exclusively for its charitable purpose of providing healthcare services to the general public. . . .

To support its position that the Center is used exclusively for "its charitable purpose," the Foundation relies on this Court's decision in *Appalachian Emergency Medical Services, Inc. v. State Tax Commissioner*, 218 W.Va. 550, 625 S.E.2d 312 (2005). Not only is that case factually distinguishable from the instant case, but a careful reading of *Appalachian Emergency* demonstrates that the decision fails to support the Foundation's position.

At issue in *Appalachian Emergency* was the State Tax Commissioner's denial of a property tax exemption to a charitable entity–Appalachian Emergency–who was leasing its property to another charitable entity–the West Virginia Emergency Medical Services Technical Support Network ("TSN"). In concluding that Appalachian Emergency was entitled to the property tax exemption, we focused on the fact that TSN was a 501(c)(3) organization; the leased property was used by TSN for its own charitable purposes; and the lessor was not realizing a profit from the lease arrangement. *Id.* at 554-56, 625 S.E.2d at 316-18. Unlike the situation in *Appalachian Emergency* where one 501(c)(3) organization

8

leased the entirety of the building to another 501(c)(3) entity, the Foundation has leased a portion of the Center to for-profit business entities (Ambergris, Dr. Bowen, Patient Transport) that use the property for admittedly non-charitable purposes.[14] In addition to the tenants whose individual and direct usage is profit-oriented, the Commissioner observes that one third of the Center is utilized to operate a Wellness Center–which has over 2,800 individual gym memberships that are sold to the public. *See* 110 C.S.R. § 24-19.3 ("Recreational facilities shall not be considered property used primarily and immediately for charitable purposes unless such facilities are designed for and primarily and immediately used by patients of the hospital.")[15]

Rather than supporting the Foundation's position, *Appalachian Emergency* conclusively demonstrates that the Foundation fails to qualify for the subject tax exemption. Central to the Foundation's position is the construct that *its* charitable purposes are what determine entitlement to the statutory exemption set forth in West Virginia Code § 11-3-9(a)(12). While this contrived reasoning may have duped the court below, we are decidedly unpersuaded by the artifice the Foundation employed to divert attention from the proper

[14]The parties stipulated to the fact that these three entities "have not been designated as exempt from federal income taxes pursuant to Internal Revenue Code § 501(c)(3)."

[15]The Commissioner notes that 800 out of the 19,000 square feet dedicated to the Wellness Center is designated for cardiac rehabilitation patients; that area is exclusively used by such patients only until 5 p.m. each day. According to the Commissioner, the Wellness Center realized $794,000 in annual gross sales from its gym memberships sold to the public.

inquiry–whether the actual usage of the Center's suites was for a charitable purpose.  In the instance of a lease arrangement, the charitable purposes of the taxpayer are not singularly determinative.  The operative term in both article ten, section one of the West Virginia Constitution and in West Virginia Code § 11-3-9(a)(12) is "use."  When a charitable lessor rents its property to another charitable entity, the focus necessarily shifts to whether the lessee–not the lessor–is using the property exclusively for charitable purposes. In *Appalachian Emergency,* we expressly rejected the Tax Commissioner's argument that the taxpayer/owner's use of the property controlled the issue of exemption, focusing on whether the usage employed by TSN was consistent with TSN's charitable purposes–not those of Appalachian Emergency.  *See* 218 W.Va. at 553-54 n.7, 625 S.E.2d at 315-16 n.7.  Thus, the Foundation's attempt to reframe the usage inquiry as determined by whether the overall usage of the Center fulfilled the Foundation's charitable purposes was wholly improper.  The exemption determination is controlled by the physical usage of the property at issue.  As regards the usage of the Center by the for-profit lessees, such usage was categorically not for charitable purposes.

Not only did the Foundation intentionally leapfrog over the significance of the Center's for-profit usage, but it failed to heed the following observation in *Appalachian Emergency:* "This Court long ago indicated that 'real estate is not exempt where owned by a [charitable] organization and . . . leased for private purposes, notwithstanding the

10

application of the income from rentals to charitable and benevolent purposes and upkeep of the premises.'" *Id.* at 555, n.10, 625 S.E.2d at 317 n.10 (citing *Central Realty*, 126 W.Va. at 923, 30 S.E.2d at 725 (1944)). Simply put, the Foundation's secondary usage of rents from profit-oriented tenants to accomplish *its* charitable purposes does not override the primary usage of the rental space by those tenants.

In trying to persuade us that the Center is used exclusively for charitable purposes, the Foundation discusses at length how any profits it realizes from the rental of its property are used for improvements to the Center or otherwise geared towards accomplishing its charitable purposes. Such reinvestment or application of profits cannot disguise either the origin of those funds or the usage of the property. This is clear from our previous recognition in *McDowell Lodge* that the application of funds received from for-profit tenants does not transmogrify the character of the leased property. *See* 96 W.Va. at 615-16, 123 S.E. at 563-64. In *McDowell Lodge,* we considered whether the real property of a charitable and benevolent organization–the Masonic Lodge–was subject to taxation based on the fact that part of the property was rented for commercial purposes. The four-story building at issue was used for lodge purposes on the upper two floors but the basement and the first two floors were rented out for private business purposes. While the rents realized from the commercial tenants were dedicated to the charitable and benevolent purposes of maintaining the building and paying off the debt owed on the building, this

11

Court was nonetheless asked to decide whether the statutory tax exemption for charitable usage was applicable. *Id.* at 611-12, 123 S.E. at 562.

In considering the tax exemption issue presented in *McDowell Lodge,* we recognized that:

> The general policy of this state, accentuated by section 1, Art. 10 of the Constitution, is that all property shall contribute to the expenses of the government. Taxes must be equal and uniform; and no species of property can be taxed higher than any other species of property of equal value. One aim of government is to protect property rights, insure the possession and enjoyment thereof by the owners, and thus promote the domestic tranquility and the general welfare. The owners of property, whether they be individuals, corporations, or associations, should contribute to the expenses of the protection and stability of that property.

*Id.* at 613-14, 123 S.E. at 562-63. After acknowledging the statutory exceptions to this general policy of taxation for certain property uses, such as for charitable purposes, we stated:

> But the statute says it shall only be exempt when the property is used for these purposes, and not held or leased out for profit. It is a rule, so well established as to need no citation of authority, that it is incumbent upon the person who claims his property as exempt from taxation to show that the use of that property clearly falls within the exception. The rule of strict construction applies, and, if any doubt arises as to the exemption, that doubt must be decided against the person who claims the exemption.

*Id.* at 614, 123 S.E. at 563.

12

Addressing the specific issue presented in this case–whether application of rental fees paid by a non-charitable organization to a charitable organization for the use of the latter's real property comes within the scope of the charitable purposes tax exemption– this Court reasoned:

> Our statute says property used for charitable purposes and not held or leased out for profit, shall be exempt. The property in question is not used wholly for charitable purposes. *The character of use of the property itself determines its exemption from taxation, and not the proceeds from its use.* The clause, "not held or leased out for profit," is significant. It is difficult to see how the property of charitable and benevolent associations could be rented except for profit to the association.[16]

96 W.Va. at 615-16, 123 S.E. at 563-64 (emphasis supplied). Accordingly, we ruled that:

> *The use of the property of the McDowell Lodge determines its status as taxable property, and not the use to which the proceeds are expended when it is held or leased out for profit.* The property having been leased out for commercial purposes and for profit, as shown by the agreed facts, is not exempt from taxation under the statute.

*Id.* at 616, 123 S.E. at 564 (emphasis supplied).

---

[16]While the Foundation views the statutory term of "profit" as meaning a net gain after the deduction of expenses, the Commissioner cites to this Court's reasoning in *McDowell Lodge* as evidence of the more common meaning of the term: "An advantageous gain or return: BENEFIT." Because the statutory exclusion at issue is written in the conjunctive–requiring both exclusive usage for charitable purposes *and* the absence of profits, we do not address at length the legislative intent pertinent to withholding a property tax exemption to property owned by a charitable organization that is leased for profit. *See* W.Va. Code § 11-3-9(a)(12). We do recognize, however, that the Commissioner's position is consistent with *McDowell Lodge*–a decision that remains valid law until overruled.

13

In *Central Realty*, we examined the issue of real estate owned by a charitable organization that is used solely for commercial purposes:

> The cases of *In re Masonic Society, supra*, and *State v. McDowell Lodge, supra*, and *State v. Martin, supra*, taken in the composite, state what we believe to be the correct rule: that where real estate is used solely by an organization for educational and charitable purposes and such use is immediate and primary the constitutional exemption from taxation applies, and the statute enacted in pursuance thereof inhibits any assessment for taxation; but real estate is not exempt where owned by a like organization and is leased for private purposes, notwithstanding the application of the income from rentals to charitable and benevolent purposes and upkeep of the premises.

126 W.Va. at 923, 30 S.E.2d at 725. In reaching that ruling, we addressed the distinction for tax exemption purposes between the use of real estate and income derived from that real property. Explaining that "[i]ncome from property is an incident of ownership but cannot always be identified with the use of property," we observed that "[t]he physical use of land is a thing apart from the income derived therefrom." *Id.* at 921, 30 S.E.2d at 724. Our ruling in *Central Realty* reaffirmed the principle that once real estate is employed in the operation of private business undertakings, the basis for the tax exemption–usage of property for charitable purposes–has been supplanted. Absent the requisite type of qualifying usage, the constitutional exemption from ad valorem taxation is not available.[17]

---

[17]The Foundation's reliance on West Virginia Code § 11-3-9(d) as support for a tax exemption despite its leasing of the Center to private, non-charitable entities is unavailing. Through the enactment of subsection 9(d) the Legislature codified this Court's rulings with regard to the requirement of exclusive or primary and immediate usage. *See Maplewood Cmty., Inc. v. Craig,* 216 W.Va. 273, 282, 607 S.E.2d 379, 388 (2004). By including "rents

14

*See Reynolds Mem'l Hosp.*, 78 W.Va. at 687, 90 S.E. at 239 ("If the property is used for charitable purposes within the meaning of the Constitution, then it is exempt from taxation; if it is not so used it is not exempt."); W.Va. Code § 11-3-9(a)(12).

While we appreciate the temptation to view the issue of the Center's usage from the perspective of promoting medical care and improving health care, the advancement of those laudatory goals is not what the Legislature has established for invoking the tax exemption.[18] *See* 110 C.S.R. § 3-19.1 (providing that "[c]harities must be operated on a not-for-profit basis . . [and] in order for the property to be exempt, the primary and immediate use of the property must be for one or more exempt purposes"); *Central Realty*, 126 W.Va. at 925, 30 S.E.2d at 726 (stating that "[t]he legislative department of government has the

---

or royalties derived therefrom" within the requirement of primary and immediate usage that applies, *inter alia*, to charitable organizations seeking a tax exemption under section 9, the Legislature was recognizing that just as a charitable organization's usage must be exclusive, or primary and immediate, so too must the rents or royalties be derived from charitable usage that is also primary and immediate. *See Appalachian Emergency*, 218 W.Va. at 554-55, 625 S.E.2d at 316-17. Were we to interpret subsection(d) as authority for ignoring the actual physical usage of the property provided the rents from such property were put to charitable purposes, we would be contravening the constitution as it specifically frames the authority for a tax exemption in terms of the property's use. *See* W.Va. Const. art. X, § 1.

[18]*See Maplewood,* 216 W.Va. at 285, 607 S.E.2d at 391 ("Notwithstanding the laudable social objectives served by the existence and operation of Appellants' [assisted living] facilities, those purposes cannot be viewed as charitable unless they come within the definitions and conditions imposed by law for application of the tax exemption at issue.").

power to provide by statute the details for tax exemption").[19]  Under West Virginia Code §

11-3-9(a)(12), the requirements for exemption are clear:  "Real property that is used

exclusively for charitable purposes and is not held or leased for profit is exempt from ad

valorem real property taxation.  W.Va. Code § 11-3-9 (1990)."  Syl. Pt. 2, *Wellsburg Unity*

*Apartments,* 202 W.Va. at 284, 503 S.E.2d at 852.  In this case, there is only one conclusion

that can be reached:  The Foundation has failed to meet its burden of establishing that the

entirety of the Center's suites are being used exclusively for charitable purposes.  *See*

*Maplewood Cmty., Inc. v. Craig,*  216 W.Va. 273, 282, 607 S.E.2d 379, 388 (2004) ("[T]o

qualify for ad valorem property tax exemption a charitable organization must use its property

*exclusively* for charitable purposes."); *see also*  Syl. Pt. 2, *In re Hillcrest Mem'l Gardens,*

*Inc.*, 146 W.Va. 337, 119 S.E.2d 753 (1961) ("Constitutional and statutory provisions

exempting property from taxation are strictly construed.  It is encumbent upon a person who

claims his property is exempt from taxation to show that such property clearly falls within

the terms of the exemption; and if any doubt arises as to the exemption, that doubt must be

resolved against the one claiming it.").

---

[19]The Foundation is free to  seek legislative expansion of the grounds upon which tax exemption is currently granted.  This judicial body, however, lacks the authority to alter the scope of the tax exemptions available to our citizenry.  *See Maplewood,*  216 W.Va. at 281, 607 S.E.2d at 387 (stating that relief sought by taxpayer from this body "is not a judicial decision but a determination that must be made by the Legislature, either through expanded regulations or through a separate legislative enactment that specifically addresses whether not-for-profit corporations, such as Appellants . . . are entitled to exemption from ad valorem property taxation").

While we have no doubt that the issue before us is controlled by our earlier decisions in *McDowell Lodge* and *Central Realty*, the following clarifications further address what is required to establish usage for charitable purposes within our constitutional and statutory framework. To the extent that real estate owned by a qualifying 501(c)(3) or 501(c)(4) charitable organization under 26 U.S.C. § 501(c)(3) or 501(c)(4) is leased or rented to a private, non-qualifying organization, the real estate is not wholly exempt from ad valorem taxation pursuant to West Virginia Code § 11-3-9(a)(12) notwithstanding the application of rental fees or other moneys realized from such lease or rental to the charitable purposes of such organization. Additionally, for purposes of determining whether a qualifying charitable organization under 26 U.S.C. § 501(c)(3) or 501(c)(4) has established the exclusive, or primary and immediate, charitable use required for seeking ad valorem tax exemption under West Virginia Code § 11-3-9(a)(12), the physical use of the property, rather than any income derived from such property, is the determining factor as to the usage of such property.

## IV. Conclusion

Based on the foregoing, the May 15, 2015, order of the Circuit Court of Berkeley County is reversed.

Reversed.

17