STATE OF WEST VIRGINIA

**Global Capital of World Peace, Inc.,**
**Petitioner Below, Petitioner**

**FILED**

**November 9, 2017**

**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 16-1061** (Hampshire County 15-AA-1)

**Norma Wagoner, Assessor of**
**Hampshire County, West Virginia**
**and Dale W. Steager, State Tax Commissioner,**
**Respondents Below, Respondents**

## MEMORANDUM DECISION

Petitioner Global Capital of World Peace, Inc., appeals the October 14, 2016, order of the Circuit Court of Hampshire County granting summary judgment to Respondents Norma Wagoner, Assessor of Hampshire County, West Virginia ("Assessor"), and Dale W. Steager,[1] State Tax Commissioner ("Commissioner"). The circuit court upheld both the Assessor's and the Commissioner's denial of an ad valorem property tax exemption to Petitioner for its Hampshire County property.  The circuit court reasoned that the property was not being used for charitable purposes within the meaning of West Virginia Code § 11-3-9 (2013). Petitioner argues that it is entitled to the exemption.[2]

This Court has considered the parties' briefs, oral arguments, and the appendix record on appeal. As explained below, we find no substantial question of law and no prejudicial error.  For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

### I.  Factual and Procedural History

Petitioner owns 355 contiguous acres in Hampshire County, West Virginia. This property contains improvements, including buildings which house approximately 100 permanent residents (all single males), along with a communal kitchen and dining hall. The residents are not charged

---

[1] Dale W. Steager was appointed State Tax Commissioner in January 2017, replacing former Tax Commissioner Mark W. Matkovich, who was the Tax Commissioner at the time of the underlying events leading to this appeal. Accordingly, pursuant to Rule 41(c) of the West Virginia Rules of Appellate Procedure, we substitute Mr. Steager as Respondent herein.

[2] Petitioner is represented by Michael E. Caryl, Esq., and J. Tyler Mayhew, Esq. The Assessor is represented by Christopher C. Luttrell, Esq. The Commissioner is represented by L. Wayne Williams, Esq.

for their lodging, but they make donations to Petitioner. The campus has gardens, an extensive trail system, and a forest buffer.

The property also has buildings for hosting meditation retreat weekends, as well as week-long and ten-day courses on Transcendental Meditation ("TM"). Those classes, seminars and workshops are offered to single men only and are conducted by the Maharishi Purusha Program (the "MPP") for individuals seeking spiritual development and enlightenment through the study and practice of TM. The MPP advertises the classes, accepts applications, screens applicants, and charges a course fee for the participants. In 2014 and 2015, classes ranged from $425 for a two-day weekend class to $1,900 for the sixteen-day New Year's TM workshop. Only paying customers can attend the TM classes; however, the permanent residents on the property, who are members of the MPP, attend the classes at no charge.

There is no formal lease agreement between Petitioner and the MPP. However, the MPP makes donations to Petitioner. The MPP reported making grants to Petitioner in the amount of $675,233 for 2013-2014 fiscal year, and $986,902 for the 2014-2015 fiscal year on the Internal Revenue Service ("IRS") form 990. No other organizations use this property.

Both Petitioner and the MPP are exempt from federal income taxes under Section 501(c)(3) of the Internal Revenue Code. Both corporations have the same corporate purpose—to "foster global world peace through the teaching and promotion of TM." Petitioner and the MPP receive tax deductible donations from individuals and organizations, which have enabled Petitioner to expend nearly $4.5 million to improve this parcel of real estate.

In January 2015, Petitioner's application for exemption of this real property for 2015 ad valorem property tax purposes was denied by the Hampshire County Assessor. Petitioner objected, and requested that the matter be submitted to the Tax Commissioner. The Tax Commissioner also denied the requested exemption in Property Tax Ruling 15-50.

Petitioner appealed the matter to the circuit court and discovery commenced. When the Commissioner submitted interrogatories to Petitioner, he asked: "What specific charitable purposes have been accomplished due to the meditation conducted on the subject property?" And Petitioner replied that it

> has fulfilled educational and scientific purposes by providing, in furtherance of its goals set forth in its Articles of Incorporation, educational and avocational courses in Maharishi Vedic Science and Technology. The course participants enjoyed extended practice of meditation for the purpose of developing greater enlightenment (development of one's full potential), improved health due to release of stress and increased brain wave coherence and greater balance in the physiology, and greater happiness. These same benefits are enjoyed by the permanent residents of the facility.

On June 15, 2016, the circuit court conducted a hearing on certain pending motions and Petitioner presented a witness, Mr. William Crossing, a resident of the property. Mr. Crossing

testified that around 100 men are permanent residents and they are not charged to stay there. Those permanent residents are members of the MPP. During the 2014 calendar year, 154 individuals attended the MPP classes. Mr. Crossing confirmed that the MPP does not serve women. He also testified that individuals must qualify prior to being accepted to attend the MPP classes by taking TM courses, practicing TM for some time, and taking advanced courses. He also testified that Petitioner was "basically just running the facility."

As there was no genuine issue of material facts, the parties filed motions for summary judgment. The circuit court held a hearing on those motions on October 5, 2016. It granted summary judgment in favor of the Tax Commissioner and held that

> [t]he organization does not meet the criteria of "charitable purposes", because the services are not gratuitous and without consideration, benefits are not for an indefinite number of persons, there is no rational basis to exclude women and married men, and the relationship with the MPP is such that the receipts in excess of expenses are, by any other name, held or leased out for profit.

This appeal followed.

## II. Standard of Review

It is well-established that "[a] circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavey*, 192 W.Va. 189, 451 S.E.2d 755 (1994). Moreover, our review is de novo given the tax questions presented that require statutory and regulatory interpretation. *See* Syl. Pt. 1, *Appalachian Power Co. v. State Tax Dep't,* 195 W.Va. 573, 466 S.E.2d 424 (1995) (holding that "[i]nterpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review.").

## III. Discussion

This Court has stated that

> [t]he general policy of this state, accentuated by section 1, art. 10, of the Constitution, is that all property shall contribute to the expenses of the government. Taxes must be equal and uniform, and no species of property can be taxed higher than any other species of property of equal value. One aim of government is to protect property rights, insure the possession and enjoyment thereof by the owners, and thus promote domestic tranquility and the general welfare. The owners of property, whether they be individuals, corporations, or associations, should contribute to the expenses of the protection and stability of that property.

*State v. McDowell Lodge, No. 112, A.F. & A.M.*, 96 W.Va. 611, 613, 123 S.E. 561, 562-63 (1924).

Our State Constitution provides that property used for "educational, literary, scientific, religious or charitable purposes" may by law be exempted from taxation. *W.Va. Const.* art. X, section 1. "The . . . Constitution does not exempt property from taxation, but [it] empowers the legislature to create exemptions for certain types of property." *Wellsburg Unity Apts., Inc. v. Cty. Comm'n of Brooke Co.,* 202 W.Va. 283, 286, 503 S.E.2d 851, 854 (1998). In West Virginia Code § 11-3-9(a)(12) (2013), the Legislature provided an exemption from taxation for "[p]roperty used for charitable purposes, and not held or leased out for profit." This Court has held that "[u]nder section 1, art. 10, Const., the exemption of property from taxation depends on its use. To warrant such an exemption for a purpose there stated, the use must be primary and immediate, not secondary or remote." Syllabus, *State ex rel. Farr v. Martin,* 105 W.Va. 600, 143 S.E. 356 (1928). We also have recognized that "[w]here a person claims an exemption from a law imposing a license or tax, such law is strictly construed against the person claiming the exemption." Syl. Pt. 2, *State ex rel. Lambert v. Carman,* 145 W.Va. 635, 116 S.E.2d 265 (1960).[3]

In this appeal, Petitioner advances seven separate,[4] largely interconnected, assignments of error arising out of the order granting summary judgment to the Commissioner. These assignments can be fairly construed to fall into two distinct categories of alleged error regarding the circuit court's conclusions that: (1) the property was not used exclusively for charitable

---

[3] *See also* Syl. Pt. 2, *In re Hillcrest Mem'l Gardens, Inc.,* 146 W.Va. 337, 119 S.E.2d 753 (1961) ("Constitutional and statutory provisions exempting property from taxation are strictly construed. It is encumbent upon a person who claims his property is exempt from taxation to show that such property clearly falls within the terms of the exemption; and if any doubt arises as to the exemption, that doubt must be resolved against the one claiming it.").

[4] Specifically, Petitioner alleges the circuit court erred by: (1) finding the property is not used exclusively for charitable purposes as the MPP's public workshops are not offered "gratuitously and without consideration" because under the Legislative rules, charities are not precluded from exacting charges upon beneficiaries for services rendered; (2) finding Petitioner uses the campus "for profit" as the MPP receives revenues from its public workshops because under the Legislative rules, charities can receive revenue "so long as any surplus or earnings are used in furtherance of the charitable activities of the organization," and all of the MPP's surplus revenue is used in furtherance of its charitable activities or donated to Petitioner; (3) finding the property does not benefit "an indefinite number of persons," because the MPP's programs are limited to men when other charities limit their programs to a single gender and the Legislative rules state that "the beneficiaries of a charity may be limited to a class of beneficiaries bearing a rational relationship to the purpose of the charity;" (4) finding Petitioner must directly and immediately benefit the other land owners of Hampshire County in order to qualify for the exemption; (5) finding Petitioner does not meet the qualifications of a charitable organization; and (6) finding Petitioner was not entitled to the exemption when both Petitioner and the MPP are 501(c)(3) charitable non-profit organizations that use the property and revenue in support of their charitable activities. In its seventh assignment of error, Petitioner states that if this Court determines it is not entitled to summary judgment, we should reverse and remand this case for further factual development.

4

purposes; and (2) the property was held or leased out for profit. As such, the assignments of error will be consolidated and discussed accordingly.[5]

Petitioner maintains that this case can be resolved by applying undisputed facts to settled law.[6] We agree. The resolution of this case is governed by this Court's holdings in *Wellsburg*. In syllabus point two of *Wellsburg*, we held that "[r]eal property that is used exclusively for charitable purposes and is not held or leased out for profit is exempt from ad valorem real property taxation. W.Va. Code § 11-3-9 (1990)." 202 W.Va. at 284, 503 S.E.2d at 852. We further held in syllabus point three that,

> [i]n order for real property to be exempt from ad valorem property taxation, a two-prong test must be met: (1) the corporation or other entity must be deemed to be a charitable organization under 26 U.S.C. § 501(c)(3) or 501(c)(4) as is provided in 110 C.S.R. § 3-19.1; and (2) the property must be used exclusively for charitable purposes and must not be held or leased out for profit as is provided in W.Va. Code § 11-3-9.

202 W.Va. at 284, 503 S.E.2d at 852.

It is undisputed that Petitioner meets the first prong of *Wellsburg* because both Petitioner and the MPP are exempt from federal income tax, under the Internal Revenue Code 501(c)(3), as charitable organizations.

Therefore, the second prong of *Wellsburg* is at issue here. And that prong contains two sub-parts: (1) whether the property is used exclusively for charitable purposes; *and* (2) whether the property is held or leased out for profit as provided in West Virginia Code § 11-3-9. *Wellsburg*, 202 W.Va. at 284, 503 S.E.2d at 852.

We first address what ultimately proves to be the dispositive issue in this appeal, whether Petitioner's property is used exclusively for charitable purposes. *Id*. The term "charity," as defined by legislative regulation, is

> a gift to be applied consistently with the existing laws, *for the benefit of an indefinite number of persons*, either by bringing their hearts under the influence of education or religion, by relieving

---

[5] *See Tudor's Biscuit World of Am. v. Critchley*, 229 W.Va. 396, 401-02, 729 S.E.2d 231, 236-37 (2012) (consolidating related and/or redundant assignments of error).

[6] Petitioner's position here, in assignment of error six, flatly contradicts previous statements in its brief that the case presents "issues of first impression," as well as assignment of error seven wherein Petitioner asserts the case should be reversed and remanded for additional fact finding.

their bodies from disease, suffering or constraint, by assisting them to establish themselves for life, or by erecting or maintaining public buildings or works, or otherwise lessening the burdens of government. It is immaterial whether the purpose is called charitable in the gift itself if it is so described as to show that it is charitable. Any gift not inconsistent with existing laws which is promotive of science or tends to the education, enlightenment, benefit or amelioration of the condition of mankind or the diffusion of useful knowledge, or is for the public convenience is a charity.

W.Va. Code R. § 110.3-2.10 (1989) (emphasis added). The legislative regulations also explain that

[c]harities must be operated on a not-for-profit basis, must directly benefit society, must be for the benefit of an indefinite number of people, and must be exempt from federal income taxes under 26 U.S.C. § 501(c)(3) or 501(c)(4). Moreover, in order for the property to be exempt, the primary and immediate use of the property must be for one or more exempt purposes.

W.Va. Code R. § 110.3-19.1 (1989).

Applying these regulations to the facts in *Wellsburg*—a charitable organization that provided housing for the elderly or low income individuals—this Court affirmed the circuit court's finding that the property was used for charitable purposes as it was "being used for purposes of relieving poverty and for other purposes which are beneficial to the community." 202 W.Va. at 289, 503 S.E.2d at 857. Similarly, this Court held in *Appalachian Emergency Medical Services, Inc. v. State Tax Commissioner,* 218 W.Va. 550, 625 S.E.2d 312 (2005), that leased property owned by a non-profit charitable corporation, and leased to another charitable nonprofit organization for their shared charitable purposes of supporting EMS services throughout the state, came within the definition of "charity." The property was being used to further the corporate mission of assisting emergency services organizations to relieve human suffering. *Id.* at 555, 625 S.E.2d at 317.

This Court recently addressed the subject statutory provision on appeal in *Matkovich v. University Healthcare Foundation, Inc.*, 238 W.Va. 345, 795 S.E.2d 67 (2016), and held in syllabus point five that

[f]or purposes of determining whether a qualifying charitable organization under 26 U.S.C. § 501(c)(3) or 501(c)(4) has established the exclusive, or primary and immediate, charitable use required for seeking ad valorem tax exemption under West Virginia Code § 11-3-9(a)(12) (2013), the physical use of the property, rather than any income derived from such property, is the determining factor as to the usage of such property.

6

Regarding the physical use of its Hampshire County property, Petitioner contends that this case is similar to *Appalachian*. We disagree. *Appalachian* is distinguishable in significant ways. The primary use of Petitioner's property is that permanent residents, who are members of the MPP, live there free of charge to practice TM. The charges for the workshops and seminars offered by the MPP that flow to Petitioner in the form of donations, provide significant economic benefit to those private individuals in the form of free room and board while they practice their chosen lifestyle. In contrast, the property in *Appalachian* did not provide any economic benefit to private individuals, and consequently, it fell within the parameters of the legislative rule. While a non-profit may exact charges for its services, that revenue may not inure to the benefit of private individuals, such as the members of the MPP who are residents of Petitioner's property. Moreover, Petitioner's property does not serve an indefinite number of persons, as the property did in *Appalachian*. W.Va. Code R. § 110-3-2.10.

The instant case is more analogous to *Maplewood Community, Inc. v. Craig*, 216 W.Va. 273, 607 S.E.2d 379 (2004). In *Maplewood*, this Court addressed two consolidated appeals from taxpayers who operated independent living centers for senior citizens and contended that they were exempt from ad valorem taxation under West Virginia Code § 11-3-9(a)(12). This Court held that "despite their status as charitable organizations for federal income tax purposes," the taxpayers did not qualify for the exemption because the property was not "used exclusively for charitable purposes." *Maplewood*, 216 W.Va. at 275, 607 S.E.2d at 381. The determining factor in *Maplewood* was that the senior communities were not operated to benefit society generally, as required by the definition of charity set forth in the regulations. Rather, the taxpayers provided facilities and services at cost only to those who had the ability to pay large deposits and significant monthly fees. By limiting the potential class of senior citizens who could benefit from the residential services through financial screening requirements, this Court held that the taxpayers did not operate their respective facilities "exclusively" for charitable purposes. We reasoned:

> Even if we were to adopt the view advanced by Appellants, essentially that the provision of residential and health care to the elderly in a setting that offers them independence, dignity, and security fulfills a charitable purpose, there is still one critical component of the tax exemption test that Appellants cannot meet. To be entitled to exemption from ad valorem property taxation, Appellants cannot "limit the class of beneficiaries in such a way as to violate the definition of a charity." W.Va. R. *Taxation* § 110-3-19.3. In defining the term "charity," the Legislature has required that qualifying acts of benevolence must be "applied consistently with the existing laws, for the benefit of an indefinite number of persons." *Id.* at § 110-3-2.10. By restricting residency to only those prospective residents who can demonstrate sufficient financial means to meet their stated costs on an indefinite basis, Appellants are clearly narrowing the pool of this state's citizenry who can potentially benefit from their services. As such, the services provided by Appellants, despite their valuableness, do not benefit a sufficiently large or indefinite number of individuals so that those

services "directly benefit society," which is yet another component of utilizing property for charitable purposes. *Id.* at § 110-3-19.1.

*Maplewood*, 216 W.Va. at 284, 607 S.E.2d at 390.

This Court recognized in *Maplewood* that although a charitable organization may serve "socially constructive purposes," that, in and of itself, was insufficient for it to qualify for an exemption from real property taxation. *Id.* at 285, 607 S.E.2d at 391. The same rationale applies here.

Although Petitioner articulates laudable goals of psychological, physical, and social wellbeing of practitioners of TM, Petitioner rigorously restricts the potential class of beneficiaries who use this property, even more so than the taxpayers in *Maplewood*. Therefore, this property is not used "exclusively" for charitable purposes. Restrictions on the class of beneficiaries must be carefully scrutinized to ensure that the charity uses its property in such a way that it provides a service to the public at large.[7] Several factors lead to the conclusion that the property is not used for the benefit of an indefinite number of persons: (1) the blanket exclusion of women and married men; (2) the significant financial barriers, considering the costs of the workshops and seminars; and (3) the restrictions limiting the use of the property to members of Petitioner, the MPP, and screened applicants who are able to demonstrate sufficient proficiency in their practice of TM. Thus, Petitioners "are clearly narrowing the pool of this state's citizenry who can potentially benefit from their services." *Id.* at 284, 607 S.E.2d at 390. In essence, the property is used as a private retreat for supporters of the charity and its related corporate entity.

Having failed to meet the exclusive use test established in *Wellsburg,* Petitioner is not entitled to the exemption from ad valorem property taxes set forth in West Virginia Code § 11-3-9. *See* 202 W.Va. at 284, 503 S.E.2d at 852, Syl. Pt. 3, in part. Accordingly, the circuit court properly ruled that Petitioner has not demonstrated that an exemption for the 2015 ad valorem property tax for its Hampshire County property is warranted.[8]

For the foregoing reasons, we affirm.

---

[7] We therefore reject Petitioner's argument that the circuit court erred by focusing its attention on whether the property was used to benefit other land owners in Hampshire County. "It simply recognize[d] that the interests of all members of the community are affected by the system of tax assessment. If one party is underassessed, the resulting injury is to all other members of the taxing district who are discriminatorily assessed and denied the benefits of full and equitable taxation." *Tug Valley Recovery Ctr., Inc. v. Mingo Cty. Comm'n*, 164 W.Va. 94, 105, 261 S.E.2d 165, 172 (1979).

[8] Because our finding that the property is not being used exclusively for charitable purposes compels us to affirm the circuit court's order, it is unnecessary to address the issue of whether the property is held or leased out for profit as provided in West Virginia Code § 11-3-9.

Affirmed.

**ISSUED**:  November 9, 2017

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

9